[S. F. No. 8258.  In Bank.—June 30, 1917.]

ROBERT SHERER & COMPANY (a Corporation), and GEORGIA CASUALTY COMPANY (a Corporation), Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and CHARLES F. BOWIN, Respondents.

WORKMEN'S COMPENSATION ACT—NIGHT WATCHMAN OF ENGINE—VOLUNTARY ASSUMPTION OF DUTIES OF ANOTHER EMPLOYEE.—An employee of a railroad contractor, whose duties were limited to acting as night watchman of a particular locomotive engine, departs from the course of his employment if he, of his own accord and without the direction or consent of the employer, and solely in pursuance of an understanding had with the watchman of another piece of machinery situated at a different place, assumes to perform the duties of the latter, and the employer is not liable under the Workmen's Compensation Act for injuries received by him while in the performance of such assumed duties.

APPLICATION for a Writ of Certiorari to review an order of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

Redman & Alexander, for Petitioners.

Christopher M. Bradley, and W. H. Pillsbury, for Respondents.

VICTOR E. SHAW, J., *pro tem.*—*Certiorari* to review the proceedings of the Industrial Accident Commission, wherein

an award of compensation was made by it to Charles F. Bowin, minor son of P. L. Bowin, for the death of the latter while in the employ of Robert Sherer & Company, contractors, who were engaged in constructing a railroad extending easterly from the city of San Diego.

In the performance of the work the contractors, during the daytime and as occasion required, operated a locomotive engine. At the close of the day's work it was the custom of the crew in charge of this locomotive to deliver it to said P. L. Bowin, who was night watchman of the engine, and whose duties under his employment were ''to stay on the engine at nights and keep it alive, keep steam in it, and have it full of water and oil in the morning, ready for the day crew to go on the shift.'' The contractors also in connection with the work operated a steam-shovel in the care of which at night one Wilfong was employed as watchman and whose duties with reference thereto were similar to those of Bowin in caring for the engine. On the night in question, when Bowin met his death, the superintendent of the contractor at the close of the day's work, having occasion to go to Tia Juana, some distance west of the camp at the point where work was being done, took charge of the engine and at about 6 o'clock P. M. left for his destination, expecting to return at 10:30, during which interval Bowin was relieved from duty until the engine got back, though it appears that he did, for an hour or so, operate a donkey-engine in pumping water into a tank from which a supply of water was obtained. While thus engaged, Wilfong, having in the course of his employment taken charge of the steam-shovel and entered upon the performance of his duties in the care thereof, went to the tank, some one thousand feet distant, where deceased was engaged, and told him that he, Wilfong, was going to camp, where his wife had arrived that evening, and, in effect, requested Bowin to take his place at the steam-shovel, stating that he would return about 10 o'clock, to all of which Bowin assented. Upon Wilfong's return at the hour named he found the dead body of Bowin lying on the floor of the platform upon which the steam-shovel was installed, he having been killed by the use of a knife wielded by a hand other than his own. Whether upon reaching the steam-shovel deceased discovered an intruder who killed him, or by whom or for what reason the deed was committed, is not made to appear, although the evi-

dence clearly tends to show its purpose was not with the view of committing robbery.

Upon these facts, and conceding that "acting within the course of his employment," as *defined by his contract,* no duty whatsoever was imposed upon Bowin in connection with the care of the steam-shovel, the exclusive control and care of which devolved upon Wilfong, for whose convenience and at whose request and without the consent of the employer Bowin assumed the care and custody thereof, respondent insists that such substitution was in accordance with a known custom acquiesced in by the employer. This contention is based upon the testimony of the superintendent to the effect that where substitution of employees was not detrimental to the interest of the company, permission therefor, when requested, was granted; but that *they did not do much of it,* and the employees generally asked his consent to such change of work. No request was made by either Bowin or Wilfong, and neither had ever acted for the other in the performance of their respective duties.

This evidence not only falls short of establishing a custom, but indeed negatives the existence of a course of business pursued by the employer as to Wilfong and Bowin under which the deceased, without permission, could claim implied authority to enter upon Wilfong's duties. Clearly, his act in so doing was unknown to his employer, whose implied orders he violated. Whether or not the superintendent would have consented to the substitution had request therefor been made is immaterial, since no request was made.

Conceding Bowin's act, in assuming the performance of Wilfong's duties, to have been unauthorized by the express terms of his contract of employment, respondent nevertheless insists that at the time of his death he was engaged in the course of his employment, for the reason that the absence of Wilfong from his post of duty created an emergency which justified him in taking charge of the steam-shovel without express orders so to do. This contention is answered by the fact that if the suggested emergency existed, it was due to the arrangement between deceased and Wilfong, pursuant to which the latter should spend the evening in camp with his wife and the former should, during his absence, assume charge of the steam-shovel as watchman thereof. This arrangement was not made in the interest of the employer, but solely for

the convenience of Wilfong, whose duties the deceased, having as shown been relieved from all duty to his employer, for the time undertook to perform. In the case of *Plumb* v. *Cobden Mills Co.*, 7 Butterworth's W. C. C. 1, it is said: "There are two sorts of ways of frequent occurrence in which a workman might go outside the sphere of his employment—the first one, when he did work he was not engaged to perform; and, second, when he went into a territory with which he had nothing to do." In the case at bar, the deceased, in assuming the duties of watchman of the steam-shovel, not only undertook work which he was not engaged to do, but, since his employment did not require him to go upon the platform where the steam-shoved was located, went to a place with which he had nothing to do. In the recent case of *Northwestern Pac. R. R. Co.* v. *Industrial Acc. Comm.*, 174 Cal. 297, [163 Pac. 1001], this court held that in order to recover compensation the employee must at the time of the alleged accident be performing a service "growing out of and in the course of his employment," and when the servant, "of his own accord and without the direction of the master, steps outside the scope of his employment, whether on the master's business or his own, the master owes him no duty as to the dangers he encounters and is not liable for injury received." To the same effect see *County of Modoc* v. *Industrial Acc. Comm.*, 32 Cal. App. 548, [163 Pac. 685], *McAllan* v *Pertshire County Council*, 8 Fraser, 783, and Willis on Workmen's Compensation, 16th ed., p. 21. Our conclusion is that the injury which caused the death of deceased did not arise out of nor in the course of his employment. Indeed, the case presented is precisely the same as though deceased had at the close of his night's labor repaired to his home and while awaiting a return of the time to assume his duties he had been murdered.

The award is annulled.

Sloss, J., Shaw, J., Melvin, J., Henshaw, J., and Angellotti, C. J., concurred.