[Civ. No. 2491. Second Appellate District.—March 22, 1918.]

EMPLOYERS' LIABILITY ASSURANCE CORPORA-TION, LIMITED, OF LONDON, ENGLAND (a Corporation), et al., Petitioners, v. INDUSTRIAL ACCI-DENT COMMISSION et al., Respondents.

WORKMEN'S COMPENSATION ACT—INJURY TO DRIVER OF STREET-FLUSH-ING MOTOR VEHICLE—RIGHT TO COMPENSATION.—Under the Workmen's Compensation Act, the driver of a street-flushing motor vehicle, whose duty was to operate and guide the machine and, incidentally, to manipulate the lever by which water was discharged upon the street, is entitled to compensation for an injury received in falling from the vehicle while attempting to pick up a wrench from the footboard to prevent it from falling into the street, notwithstanding that in violation of orders he had permitted another person to take the steering gear while he moved to the left-hand side of the seat, where he was engaged in manipulating the lever.

APPLICATION for a Writ of Review originally made to the District Court of Appeal for the Second Appellate District to annul an award of the Industrial Accident Commission.

The facts are stated in the opinion of the court.

George H. Moore, for Petitioners.

Christopher M. Bradley, and Warren H. Pillsbury, for Respondents.

WORKS, J., *pro tem.*—The petitioners Tryon & Brain, copartners, were engaged in the operation of certain street-flushing motor vehicles in the city of Los Angeles and Earl

A. Booth was the driver of one of them.   He was forbidden by his employers to permit any person to ride on the vehicle with him while he was in the discharge of his duty.   Nevertheless, upon the occasion which is of interest in this proceeding, he had in company with him one Schilling, while he was engaged in his work.   The truck operated by Booth had a seat across the front capable of accommodating two persons.   Immediately in front of the right side of the seat was the steering wheel, by means of which the truck was guided, the vehicle being what is known as a right-drive machine.   It was on the right side of the seat, therefore, that Booth was accustomed to sit when the truck was in service in his charge.   On the occasion now in question, however, Schilling, who was an experienced motor driver, occupied the right side of the seat and operated the car.   Booth was at his left and, while the truck was moving forward under the guidance and operation of Schilling, was engaged in the manipulation of a lever which controlled the discharge of water upon the street.   While so engaged, Booth observed a wrench lying on the footboard of the truck.   He feared it was about to fall into the street and reached over to pick it up.   In his attempt to do so he pitched to the ground and suffered severe injuries from the fall.   At the time, the truck was moving over a smoothly paved street and there was no jar nor shock to which Booth's fall could be attributed.

Because of the injuries suffered by him, Booth made application to the respondent Accident Commission for compensation and it was awarded him.   In this proceeding the petitioners seek to have the award annulled.

Petitioners' first point is that Booth's injury did not occur in the course of his employment, for the reason that when he surrendered the running of the truck to Schilling he stepped aside from his employment and took upon himself an added risk not within the course of the employment. Counsel cite several decided cases to the general point that compensation may not be awarded an employee where he departs from the performance of his regular work and takes up the discharge of another task for his employer, which latter is different from the ordinary work which the employee was engaged to perform.   One of these cases, taking it as a sample of them all, is *Robert Sherer & Co.* v. *In-*

*dustrial Accident Commission*, 175 Cal. 615, [166 Pac. 318]. In that case the employee was a night watchman on a locomotive, but he was injured when he was away from the locomotive altogether and while performing work entirely distinct from his duty in connection with it. He had left the engine and had temporarily taken the post of a night watchman on a steam shovel owned by the same person who owned the locomotive, the steam shovel being some distance from the locomotive. While the employee was on the steam shovel he lost his life and the supreme court held that his heir was not entitled to compensation, because the deceased was outside the course of his employment at the time. That case and the others like it do not aid us now. The employee of Tryon & Brain did not abdicate either the place or the character of his employment. He gave up a part of his work to another, it is true, as he permitted Schilling to run the truck, but it was strictly within the line of his duty to operate and care for the levers which controlled the flow of water from the tank of the truck to the street. The same may be said of his attempt to prevent the wrench from falling from the footboard. He was not outside the course of his employment merely because he allowed a stranger to perform a part of his task while he was engaged in the performance of the remainder of it. It is a part of petitioners' contention on this point that Booth took upon himself a risk outside of his employment in permitting Schilling to run the truck; but that does not appear to be the case. In fact, the contrary appears. The accident, so far as any connection of Schilling with it as a causative factor is concerned, happened in no manner different from the following imaginary case: We will suppose the truck to be standing still for some proper reason, let us say, while the truck tank is being filled from a fire-plug at the curb. As the truck stands, let us also suppose Booth to be occupying the left side of the seat, either because the fire-plug is on that side and he will soon be called upon to turn off the water, or for any other reason. He discovers the wrench on the footboard and, in reaching for it, falls from the car, either because he becomes overbalanced, or his foot slips, or his hand misses its hold upon some handle or projection he has attempted to seize as he leans forward. In such a case he would undoubtedly be entitled

to compensation, and the record here discloses no different state of facts, so far as legal effect is concerned.

The petitioners contend that Booth was intoxicated and that his injury resulted from his being in that condition. They insist that a finding of the respondent commission that he was not intoxicated is not sustained by the evidence. They do not contend that there was not evidence before the commission on both sides of this question, but they insist that the testimony to the effect that Booth was not intoxicated was "intrinsically unbelievable." We do not so regard it. The commission was within its province, under all the evidence, in determining that Booth was not intoxicated at the time of the accident.

The petitioners insist that there should be an annulment of the award to the extent that it allows the amount of a certain bill for hospital charges and for the services of physicians. They say that no evidence was taken upon the question and that the only showing of record in support of the allowance of the bill is a statement of charges at a hospital, filed seven days after the case was submitted to the commission for decision. This bill was filed pursuant to a stipulation entered into at the hearing, within the terms of which it appears properly to come, both as to its subject matter and as to the time of its filing.

The award is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 21, 1918.

Melvin, J., and Lorigan, J., dissented from the order denying a hearing in the supreme court, and filed the following opinion on May 21, 1918:

MELVIN, J.—I dissent from this court's refusal to transfer the case to the supreme court.

The man to whom the Industrial Accident Commission awarded compensation was the driver of a street-flushing motor vehicle. His duty was to operate and guide the machine and, incidentally, to manipulate the lever by which water was discharged upon the street. The only place from

which he could perform these services was the right side of the seat. He was forbidden to allow anyone to ride with him, but, in violation of orders, had permitted another man to take the steering gear while he moved to the left-hand side of the seat. While seated there he endeavored to pick up a wrench from the footboard on that side of the truck, and in so doing lost his balance, fell, and was injured.

It is clear that if the driver had been in the place where his obligation to his employers required him to be, he would not have met with this accident. The fact that he was using the lever for the release of the water—a part of the work intrusted to him—is a false quantity in the problem. His was not a divided duty. He was not required to steer the car part of the time from the right-hand side of the seat and to work the lever a part of the time from the other side. His place of duty was at the steering wheel. This place he had abandoned in disobedience to orders, and if he had done the work for which he was hired and paid, he would not have met with this accident. If the man had left his machine; had gone to Casey's saloon for a drink; and while there had been hit by a hardwood bung starter wielded by a strong-armed bartender, no one would pretend that his employer was bound to compensate him. Yet his position on the left-hand side of that seat was logically as flagrant a departure from his post of duty as would have been his presence at Casey's bar. The case of *Robert Sherer & Co.* v. *Industrial Accident Commission,* 175 Cal. 615, [166 Pac. 318], is absolutely in point, and is utterly opposed to the conclusion reached by the Industrial Accident Commission, the district court of appeal, and the majority of the justices of this court.

Lorigan, J., concurred.