MINNIE BURCHFIELD STALLCUP, WIDOW, v. CAROLINA WOOD TURN-
ING COMPANY, EMPLOYER, AND AMERICAN MUTUAL LIABILITY
INSURANCE COMPANY, CARRIER.

(Filed 20 March, 1940.)

1. **Master and Servant § 55d—**

Findings of fact of the Industrial Commission are conclusive on the courts when supported by any competent evidence.

2. **Master and Servant § 40f—Facts held not to show as matter of law that accident arose in course of employment and denial of compensation must be sustained.**

The findings of fact of the Industrial Commission, supported by the evidence, were to the effect that deceased employee was a night watchman, that his duties were to make periodic inspection and to attend the furnaces and get up steam, that on the night in question he procured his son to help him, that he instructed his son to do certain of his duties in the

boiler room, that he placed a small box and plank on a walkway eight or nine feet high, with one end of the plank resting on the box, and lay down on the plank, that his son called him in time to make a periodic inspection some thirty minutes later, and that in getting up from his recumbent position, while his son was engaged in the performance of the employee's active duties in the boiler room, the employee fell from the walkway and was fatally injured. *Held:* The facts do not compel the conclusion, as a matter of law, that at the time of injury the employee had not deviated from, or abandoned his employment, and therefore the award of the Industrial Commission denying compensation must be upheld.
SEAWELL, J., dissenting.
CLARKSON and SCHENCK, JJ., concur in dissent.

APPEAL by plaintiff from *Pless, Jr., J.,* at October Term, 1939, of SWAIN.    Affirmed.

Claim for compensation under the Workmen's Compensation Act, prosecuted by plaintiff, widow of Seth L. Stallcup, deceased employee of the defendant Carolina Wood Turning Company,

It was admitted that the deceased husband of the plaintiff, Seth L. Stallcup, was an employee of the defendant Carolina Wood Turning Company; that the said defendant is bound by the provisions of the Workmen's Compensation Act and that the said employee received injuries on the early morning of 31 August, 1938, from which he died.    The only question at issue before the Commission was as to whether the deceased employee met his death from an accident arising out of and in the course of his employment.

The deceased was employed as a night watchman at the defendant's plant and was charged with the general duties of a night watchman and was required to attend to the furnaces, the dry kilns, etc.    His hours were from 11 o'clock p.m. to 7 o'clock a.m.    He had been ordered not to allow anyone on the premises during the nighttime except certain employees who had definite designated duties.    Contrary to these instructions deceased had been permitting his son to assist him in the discharge of his duties, and a few minutes prior to 4 o'clock on the morning of 31 August, 1938, he went to his home, awoke his son and directed him to come to defendant employer's plant and assist him.    The son arrived at the plant about the time deceased was completing his 4 o'clock round of inspection.    Deceased instructed his son to proceed to perform certain duties in connection with preparing to make the fire in the furnace and stated that he, the deceased, was going to lie down and rest and cool off. Deceased then procured a box approximately 12 to 18 inches in height and about 12 inches broad, and also a plank, which plank was about 12 inches wide and 10 or 12 feet long, which he carried to a walkway which was about 50 to 70 feet long and which was built from the main plant to the boiler room and which was about 3 feet wide and approximately

8 or 9 feet in height above the ground. He placed the box on the walkway, then placed one end of the plank on the box and put a raincoat thereon and then lay down on the bed or resting place thus improvised. This was about 25 minutes after 4 o'clock. Shortly before 5 o'clock his son called or aroused him and spoke to him concerning the 5 o'clock round of inspection. Deceased said he wished to make his round himself and directed his son to prepare to make a fire in the furnace; that he, the employee, would make the round and come back and help. A few minutes thereafter the son, having heard a noise, went out and found the employee lying on the ground where he had in some way fallen from the walkway. He was seriously injured and died in a few minutes as a result thereof.

The Commission found, in part, "that the deceased at the time of his death and for a period of 20 to 30 minutes prior thereto, had completely abandoned and deviated from his employment; that the acts which he performed during this period had nothing whatever to do with his employment and that the same were not to the interest nor to promote the interest of his employer, but, on the contrary, were for the personal pleasure, convenience and comfort of the deceased employee; that the creation of the box, plank and raincoat bed by the employee, consisted of an additional and dangerous hazard which had no connection whatever with the deceased's employment and that specifically the deceased Seth L. Stallcup did not meet his death from an injury resulting from an accident arising out of and in the course of his employment."

Upon these and other findings made by the Commission it entered its order denying compensation. Upon the appeal of plaintiff the court below affirmed the judgment of the Commission and the plaintiff excepted and appealed.

*B. C. Jones, T. D. Bryson, Jr., and E. C. Bryson* for plaintiff, appellant.
*Smathers & Meekins* for defendants, appellees.

BARNHILL, J. The findings of fact, the conclusions of law and the opinion of the Commission in this cause are commendably full, clear and concise. The facts found are supported by the evidence and warrant the conclusion that the plaintiff is not entitled to compensation under the Workmen's Compensation Act. Ch. 120, Public Laws 1929. The facts thus found, being supported by evidence, are conclusive. *Lockey v. Cohen, Goldman & Co.,* 213 N. C., 356, 196 S. E., 342; *Johnson v. Lumber Co.,* 216 N. C., 123; *Baxter v. Arthur Co.,* 216 N. C., 276; *Tindall v. Furniture Co.,* 216 N. C., 306; *Clark v. Sheffield,* 216 N. C., 375; *McNeill v. Construction Co.,* 216 N. C., 744.

The parties have filed comprehensive briefs in which they discuss (citing many authorities) whether the conduct of deceased constituted a departure from and an abandonment of his employment and whether the creation of an unnecessary hazard bars recovery. The facts found by the Commission make it unnecessary for us to discuss these questions.

The accident did not occur during a rest period between the times the deceased was required to make his rounds of inspection. It happened at a time when it was his duty to be engaged actively in the boiler room cleaning out grates and increasing the head of steam in the boilers and about 10 minutes before he was to start his next round of inspection. He had delegated these duties to his son, who was then engaged in the performance thereof, and had retired to a temporary and precarious resting place of his own construction and of his own choosing. These facts, which are established by uncontradicted evidence offered by claimants and the defendants, and which are found, in substance, by the Commission do not require the conclusion, as a matter of law, that the conduct of the deceased does not constitute a deviation from or an abandonment of his employment.

The judgment below is

Affirmed.

SEAWELL, J., dissenting: The function of the Court is the interpretation and application of law—but not merely written law. Beyond this, there is a great body of principles established by public policy which we regard as binding. They are reflected in the decisions of the courts—of this Court as well as others—and, outside of constitutional amendment and statutory enactment, they offer the only known means of keeping law adjusted to enlightened progress. Without violating these principles the courts cannot establish arbitrary requirements between employment and labor contrary to recognized custom and usage which enter into the terms of the contract and so invite a return to conditions from which society has painfully lifted itself through the conflict and turmoil of the years.

In my opinion, the decision of the Industrial Commission denying compensation for the death of the watchman, Stallcup, is a serious departure from those principles, in adopting an arbitrary conception of the duties of the watchman, contrary to recognized standards, and in declining to recognize the rules of liberal construction which it was their duty to observe in the administration of the act. The result is to place upon common labor in this field, to the advantage of the employer and the insurance carrier, a burden which the law did not intend it to carry. Moreover, the main fact found by the Commission that the deceased was asleep at the time of the accident, or was arising from sleep, is not

supported by any evidence whatsoever, and I think a fair interpretation of the order of the Commission admits it. I am not willing it should pass this Court with a mere formulary approval. The facts demand scrutiny.

All authorities agree that the provisions of workmen's compensation acts must be liberally and broadly construed in favor of the employee. "It is, of course, the settled rule everywhere." *Ex parte Coleman,* 211 Ala., 248, 100 S. E., 114, 115. *Williams v. Thompson,* 200 N. C., 463, 157 S. E., 430; *West v. Fertilizer Co.,* 201 N. C., 556, 160 S. E., 765; *Johnson v. Hosiery Co.,* 199 N. C., 38, 153 S. E., 591; *Reeves v. Parker-Graham-Sexton, Inc.,* 199 N. C., 236, 154 S. E., 66; *Cole v. Minick,* 123 Neb., 871, 244 N. W., 785, 787. This is not only because they are remedial statutes, but because of their history great concessions of common law rights have been made, and because they are for the benefit of "the laboring class." *Southern Surety Co. of New York v. Scheels,* 49 S. W. (2d), 937; *Henley v. Oklahoma Union Railway Co.,* 81 Okla., 224, 197 P., 488, 490, 18 A. L. R., 127; *Stacy v. State Ind. Accid. Com.,* 26 P. (2d), 1092, 1094; *Cleveland Railway Co. v. Kingdom,* 23 Ohio App., 95, 154 N. E., 168. "The act in question arbitrarily restricts the rights of employees affected by it." *Ætna Life Ins. Co. v. Rodrigues* (Tex. Civ. App.), 255 S. W., 446, 447. "With the utmost liberality," says *Ind. Com. v. Sodec,* 55 Ohio App., 177, 177 N. E., 292, 293. Also in *Eastern Texas Elec. Co. v. Woods* (Tex. Civ. App.), 230 S. W., 498, 503; *McQueenie v. Sutphen & Hyer,* 153 N. Y. S., 554. "Every intendment of the statute" is the wording in *Great American Indemnity Co. v. Essary* (Tex. Civ. App.), 57 S. W. (2d), 891, 892. "It is the universal holding of the Court." *Smith v. Marshal Ice Co.,* 204 Iowa, 1348, 217 N. W., 264, 265. This is not merely because it is a remedial law, but because of the complete wash-out of common law rights and remedies in favor of the employees which it brings about. *In re Bowers,* 65 Ind. App., 828, 116 N. E., 842, 843. It has been frequently held that all doubts as to the right to compensation should be resolved in favor of employees or their dependents. *National Cast Iron Pipe Co. v. Higgenbottom,* 216 Ala., 129, 112 S., 734. "All presumptions indulged will be in favor of those for whose protection the statutory compensation was fixed and who, by the terms of the act, are deprived of the ordinary remedies open to others whose rights are invaded." *Wick v. Gunn,* 66 Okla., 316, 169 P., 1087, 4 A. L. R., 107. *Liberality of interpretation thus required extends to the nature and cause of the accident and injury, and whether or not it is within the orbit of employment.* Specifically, the provision "arising out of and in the course of employment" must be liberally construed. *Stacy Bros. Gas Construction Co. v. Massey,* 92 Ind. App., 348, 175 N. E., 664. "The words 'by accident arising out of and in the course of employment,' as used in workmen's compensation

acts, should be given a liberal construction in order that the humane purpose of their enactment may be realized." *Empire Health & Accid. Insurance Co. v. Purcell,* 76 Ind. App., 551, 132 N. E., 664, 665; *Holland St. Louis Sugar Co. v. Shraluka,* 64 Ind. App., 545, 116 N. E., 330. It might be well to remember this word "humane."

Contrary to accepted precedent and the theory upon which all workmen's compensation laws are based, the Commission achieved at the very first a point of view of rigidity and strictness. "His duties" (night watchman at defendant's plant) "are very similar to those of a sentry or night guard on a military reservation." This is not the use of an unfortunate expression. It is the expression of an unfortunate attitude. The militaristic conception is faithfully followed at every vital turn in the case.

I do not wish anything that I may say in the treatment of this case to be construed as reflecting on our Industrial Commission, which I regard as outstanding in this country, not only as to personnel but as to the fine contribution it has made to this difficult branch of administrational law by constructive decision. This, as I know, was not achieved without faithful study and a well informed and conscientious application of the Workmen's Compensation Act to the cases decided by that body. In that respect, the uniform correctness of decision, although in the history of the administration here very intricate matters had to be handled, has left the courts little to do. It is not amiss to say that the broad research made by members of this body into subjects connected with the administration of this and similar laws is nationally recognized. I only wish to point out that in my judgment a departure has been made in this instance from that liberality of construction which is enjoined both upon them and us, and a strictness applied in this case which is unusual in the decisions of that body, and which I think is in conflict with the rules, which should guide us in the interpretation of the law.

The evidentiary facts are undisputed and clear in their import and, therefore, the finding that the deceased employee did not come by his injury and death through an accident arising out of and in the course of his employment is a question of law. *Baron v. National Metal Spinning & Stamping Co.,* 182 N. Y., 284, 169 Supp., 337; *Ind. Com. v. Big Six Coal Co.,* 72 Colo., 377, 211 P., 361; *Noskey v. Farmers Union Coop. Assn.,* 109 Neb., 489, 191 N. W., 486. Conclusions of fact are inferences which must not be based upon speculation but upon relevancy of the probative fact. Whether there is such relevancy the Court will determine.

There is no evidence to support the findings or conclusions of fact upon which this conclusion of law was predicated. To be more specific, there is no evidence in the record upon which the Industrial Commission could base the conclusion that the deceased watchman had made any

deviation from his employment and was outside of its orbit when his injury was sustained.

The undisputed facts are as follows: Stallcup was a watchman at the plant of the defendant company, the duties of which position continued from eleven o'clock in the evening until seven o'clock in the morning. He had other intermittent duties to perform in connection with this continuous employment as a watchman. It was his duty to start fires in the boilers to get up steam in time to start the engines in the morning, and to keep the fires going in the drying plant. As watchman he was required to make periodic rounds and punch clocks in various positions on the premises to serve as evidence of his inspection. With the exception of these periodic rounds his activities were not scheduled as to time. Between his rounds there were periods of comparative inactivity, during which he was not required to be at one place more than another—a time during which his duties might be summed up as those of waiting and watching. What position he should take at such times—whether standing, sitting, or recumbent—was largely of his own choosing.

On the morning of his death he secured the services of his son to fire the boiler for him and, between his rounds of inspection, laid a plank upon a box on a walkway near the boiler room, placed his raincoat upon it, and lay down to rest. A short time thereafter his son came to the door, called him and reminded him that it was approaching time for the five o'clock round. The father responded by giving the young man instructions as to the firing of the furnace. Shortly thereafter this witness heard a fall, and going out found his father had fallen upon the concrete about eight feet below the walkway and seemed badly hurt, calling for a doctor. Young Stallcup went after his mother, called the doctor, and when the doctor arrived it was found that the elder Stallcup was dead. The autopsy showed that the left lung had been injured and that he had bled internally.

Upon this evidence the Full Commission found that the deceased employee was asleep, or that he was in a dazed condition following sleep, when the accident occurred; that for his own ease and comfort he had taken up a position which made it impossible for him to perform the duties of a watchman; that he had delegated the duties of his position to his son, and had thus abandoned them; that he had increased the hazards of his employment and, therefore, was without its pale.

I take these findings somewhat in their order.

There is no evidence in the record that Stallcup was asleep at any time, nor is there any evidence that he was in a dazed condition following sleep at the time the accident occurred.

How far the Industrial Commission may be indulged in refusing to believe credible testimony is still to be worked out, but its arbitrary dis-

regard of positive testimony and the substitution therefor of mere specu-
lation is within the power of review and correction by this Court.

There is no real evidence anywhere in this case that Stallcup was
asleep on duty or asleep at all, although the able counsel for the defense
pressed this phase of the case with commendable vigor and zeal, both in
the development of the case before the Commission and in his argument
here. The testimony of young Stallcup on this point, while confused at
points, does not, in probative value, amount to evidence but, indeed, is
to the contrary. The Commission, rightfully I think, took that view
of it.

*The Industrial Commission itself took this view of the matter by find-
ing (R., p. 36) that "there is no testimony that the deceased was asleep."
Yet, out of the thinnest of thin air, the Commission permitted hypo-
thetical questions to be propounded to witnesses, based on the assumption
that the deceased was asleep, and to testify as to conditions of mental
confusion following a sudden awakening.* (The diminution of the blood
supply in the brain, caused by suddenly changing from a recumbent
position to an erect position, as a matter of common knowledge fre-
quently causes dizziness, without preceding sleep. The evidence refutes
the finding that there was a dazed condition, but if it had been the case
it was as easily attributed to this innocent cause as it was to sleep.

What else is there in the evidence suggestive of sleep after this testi-
mony was properly disregarded by the Industrial Commission? Nothing
more than that the deceased had been for some time in a reclining posi-
tion, and that he fell. These facts have no probative relevancy to sleep,
and any finding based upon them is pure speculation. *Farfour v. Fahad,*
214 N. C., 281, 199 S. E., 521.

The deceased was upon the premises. There was nothing in the
nature of his employment that required him to be at any particular
place at any particular time except as he made his rounds. In order,
therefore, to remove him constructively from the orbit of his employ-
ment he must have been asleep, for in no other way could he negatived
the attention and alertness of faculties which was, at the moment, all that
could be required of him.

But concede for purposes of this analysis that the deceased had been
asleep, and that this caused a deviation from his employment. As soon
as he awoke he was upon the premises, at the very point physically, and
morally, where the deviation had occurred, and he was *eo instanti* within
the ambit of his employment, and in the very act of performing one of
his more active duties, that of making the five o'clock round. Schneider,
Vol. 1, 2nd Ed., p. 1182; *Conyer v. Canadian Northern Railroad Co.,*
12 N. C. C. A., 898.

There is no evidence in the record that any previous condition of
sleep or inattention at this time clouded his faculties. There is this

abstract statement by an expert witness that confusion might follow sleep. There is a speculation on the part of the Industrial Commission that this confusion then attended the watchman. They were not content with the positive testimony of young Stallcup that such was not the case. They were not content with the evidence that the watchman had given specific and intelligent directions with regard to starting the fire, denoting his full consciousness and awareness. The "circumstances," they conclude, show that he was asleep. There are no circumstances pointed out, and there are none other than I have stated, and if they have any relation at all to that condition it is, at most, speculation. The utmost sinning that can be imputed to the deceased is that he rested between rounds.

The Commission has undertaken to take judicial notice of the duties of a watchman, and the Court, inadvertently I think, has approved that principle, although it has been rejected by other tribunals. But, if the Industrial Commission may do so, so may this Court. But whether we go by the record or by a common knowledge of the employment as a watchman, the Industrial Commission has taken a view of the incidents of this employment entirely inconsistent with that held by textwriters and courts whose conclusions we have been accustomed to respect. They measure the demands of the employer no less than they do the liberties of the employee. They are far from regarding the employee as a slave whose humanities may be refused recognition, or a robot who has none. These uniformly recognize the human limitations which are involved in service, and from them we may epitomize the respect which must be paid by employer and employee to their mutual rights. "No break in the employment is caused by the mere fact that the workman is administering to his personal comfort or necessities as by warming himself or seeking shelter, or by leaving his work to relieve nature, or to procure drinks, refreshments, food, or fresh air, or to rest in the shade." Honnold, Vol. 1, p. 382; *Koch v. Oakland Brewing and Malting Co.,* 1 Cal. I. A. C. Dec., 373; *Jackson v. General Steam Fishing Co., Ltd.,* 2 B. W. C. C., 56, H. L. Ct. of Sess.; *Clem v. Chalmers Motor Car Co.,* Op. Mich. Indus. Accid. Bd., Bul. No. 3, p. 40.

A principle which the Commission seems wholly to have ignored is that in employment of this kind, where the more strenuous duties are intermittent, there is a·period of comparative relaxation, if not leisure, in which attention to the personal comfort of the employee does not take him out of the orbit of his employment. Thus, in *Iron Co. v. Ind. Comm.,* 160 Wis., 633, 152 N. W., 416, an employee who in such an interval of inactivity went into a car to warm himself by heat from the briquettes which it was his duty to unload and in consequence thereof was killed through a collision with another car upon the track, the injury was compensable and the Court said: "The man's duties involved periods

of leisure during which apparently he was expected to kill time as best he might, with no specific direction as to what he should do or where he should wait; the night was cold, and he put off dumping the car until he could warm himself from its heated contents; to say that in so doing he had left the master's employment, was pursuing his own private purposes, and doing something foreign to the work he was employed to do is illogical to a degree."

A night watchman had gone to a shanty to cook food and it fell and injured him. He had no business in the shanty or to make fire there at night. The injury was held to have been sustained in the course of his employment. *Morris v. Lambeth Borough Council,* 8 W. C. C., 1, C. A.

To further support the view that a night watchman injured while resting between his rounds is entitled to workmen's compensation, we may note the following: Injury in fight in wash-room while preparing to eat lunch (*Vordy v. Joseph Horne Co.,* 96 Pa. Super. Ct., 550); injury to eye during scuffle of other employees during lunch hour or during working period (*Vignaul v. Howze,* 150 So., 88, La. App., 1933); injury due to falling out of chair while reading at lunch time (*Sears, Roebuck & Co. v. Finney,* 169 Tenn., 547, 89 S. W. 2nd, 749; prostration from heat while sitting in sun during rest period (*Holmes' Case,* 267 Mass., 307, 166 N. E., 827); injury due to combing hair preparing to leave work (*Terlecki v. Strauss,* 85 N. J. L., 454, 89 Atl., 1023); death due to blasting of stumps by logging foreman during lunch hour (*Lumber Co. v. Industrial Commission,* 168 Wis., 230, 169 N. W., 561); going to answer telephone (personal call), *Holland St. Louis Sugar Co. v. Shraluka, supra;* returning to work upstairs after setting bottle of tea in basement (9 note, p. 933, *Etherton v. Johnstown Knitting Mills Co.,* 184 App. Div., 820, 172 N. Y. S., 724, 17 N. C. C. A., 961).

I have already expressed myself as to the effect the position which the deceased had taken up might have on the question of deviation from employment. As I have before stated, there is nothing in the record, and I know nothing regarding the duties of his employment, that would require him to be in any particular place during the time of his less active duties. A reasonable alertness to those duties is not inconsistent with his conduct in this respect, as disclosed by the record.

The deceased did not abandon his duties or deviate from his employment by delegating only a portion of his intermittent duties, that is, of firing the boiler, to his son. *Employers' Liability Assurance Corp. Ltd. of London, England, v. Ind. Acc. Com. of California,* 179 Cal., 432, 177 P., 171. This is especially true, since his duties as a watchman were continuous, to be performed notwithstanding any other duty, and this duty he did not delegate.

The main opinion says the accident "happened at a time when it was

his duty to be engaged actively in the boiler room cleaning out grates and increasing the head of steam in the boilers." The record evidence does not support this. There is no evidence whatever in the record that it was his duty to attend to the boilers at that particular time. On the contrary, firing the boiler was superadded to his duty as watchman, did not produce a discontinuity in his duties as watchman, and it was only necessary to fire the boiler in time to have steam up for the beginning of operations, then hours away.

The Industrial Commission did not make a frank acceptation of the facts of the case above cited, *Employers' Liability Assurance Corp. Ltd., of London, England, v. Ind. Acc. Com. of California.* Its pertinency cannot be evaded. The employee in that case was driving and steering the truck as well as manipulating the levers controlling the sprinkler. He surrendered the important duty of driving and steering and control of the truck to a stranger, while he attended to the less responsible duty of manipulating the levers; yet the Court held that his injury was compensable, upon the ground that he had not wholly abandoned the duties of his employment. "He was not outside the course of his employment merely because he allowed a stranger to perform a part of his task while he was engaged in the remainder of it." If we adopt that reasonable view, we are, thus, returned to a consideration, not whether he had abandoned his duty with respect to firing the boiler, but whether he had completely deviated from his employment as a watchman, a matter I have already discussed.

The simple device of elevating one end of the plank, upon which the deceased lay, by placing it upon a box, is called by the Commission a "death trap," and is held to have so added to the peril of the employment as to constitute a departure therefrom. If we were trying a case of negligence, it might be considered some evidence, but negligence, except as it may be regarded as an accident, is foreign to the theory of workmen's compensation laws. They are specially designed to be rid of that complicated field of jurisprudence and to reach justice with less refinement and more certainty. 71 C. J., p. 247. The underlying theory is that of insurance. *Maryland Casualty Co. v. Industrial Commission,* 198 Wis., 202, 223 N. W., 444, 445.

Most workmen's compensation acts specifically provide that the negligence of the employee shall not bar his recovery. The question as to whether a known act adds such a peril to employment as to bar compensation is one of law upon the facts. The Court cannot consistently hold that this simple act of the deceased is of such a character as to defeat compensation without going deep into the field of negligence and deciding the case consciously or unconsciously, upon that principle. How remote the facts in the case at bar are from sustaining that principle may be best understood by illustrations from compensation cases:

It is said in Honnold on Workmen's Compensation, page 389: "A peril which arises from the negligent or reckless manner in which he does the work which he is employed to do may well, and in most cases rightly, be held to be a risk incidental to the employment." Acts not in willful disregard of notice or known danger, but merely negligent, are not sufficient to defeat compensation.

In *Pepper v. Sayer,* 7 B. W. C. C., 616, C. A., where a farm bailiff, who needed something from a cowshed which was locked and did not want to go home for the key, imprudently got up on the window sill in an effort to reach what he wanted, slipped, and was killed in the fall, it was held to be an accident arising out of and in the course of his employment and compensable.

In *Durham v. Brown Bros. & Co., Ltd.,* 1 F., 278, Ct. of Sess., where a workman seeking to find out the cause of a leak from a tank, climbed up to it by an obviously dangerous way, instead of by a perfectly safe way which was provided, and in consequence thereof was killed by some machinery which was close, the injury and death were said to be compensable.

In *Bullworthy v. Glanfield,* 7 B. W. C. C., 191, C. A., where a window cleaner tried to get from a window which he had just finished to the next by crawling along a narrow ledge, instead of going back into the room, and was injured, the injury was held to be caused by an accident arising out of and in the course of employment and was compensable.

The causes leading to the adoption of workmen's compensation acts are well known and well understood. 71 C. J., 242, *et seq.* In this State, at least, the chief of such causes was the fact that exposure to personal injury suits had become ruinous to industry. Such statutes, commendable as they are when properly administered, are in derogation of common law rights, and involve commitments, compromises, and concessions in which recoveries are drastically limited. Through them certainty and security are intended to be provided both to the employer and to the employee; most of all it is intended that the ends of justice may be reached by simple administrational processes short of the uncertainty and technicalities of negligence law. In return for these concessions, broader principles of liability were applied to employers, so that industry might take care of its own wreckage. When, because of the renaissance of these abandoned technicalities in the practice of administrational boards, it becomes apparent that these objectives can no longer be reached, the end of the experiment is in sight.

The judgment in this case ought to have been reversed.

CLARKSON and SCHENCK, JJ., concur in dissent.