No. 18,007.

WESTERN CASUALTY & SURETY COMPANY, ET AL. *v.* BERT L. SWORT.

(306 P. [2d] 661)

Decided January 7, 1957. Rehearing denied February 18, 1957.

Messrs. Yegge, Bates, Hall & Shulenburg, for plaintiff in error Western Casualty & Surety Co. and A. D. Kenyon.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for plaintiff in error Industrial Commission of Colorado.

Messrs. McComb, Zarlengo & Mott, Mr. Harold D. Torgan, for defendant in error.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the Court.

Bert L. Swort, defendant in error, admittedly an employee of plaintiff in error, A. D. Kenyon, doing business as A. D. Kenyon Machinery Company, was injured on September 11, 1954, and Swort filed his claim for compensation for these injuries with the Industrial Commission of Colorado. Hearing thereon was had before a referee of the Commission, who made findings that claimant Swort was injured in an accident arising out of and while in the course of his employment by Kenyon, and ordered compensation and medical benefits.

On petition for review the commission vacated the order of the referee and denied Swort's claim. Following claimant's petition for review of this order denying the claim, pursuant to statute, Swort filed an action in the Denver district court to set aside the order of the commission. In that action his employer, the industrial commission, and Western Casualty and Surety Company were made defendants. Western Casualty and Surety Company is the insurance carrier of Kenyon. Answers were filed by defendants, and the entire record of the industrial commission in the case was submitted to the trial court.

Upon hearing and review, the district court found the issues in favor of Swort and entered judgment in his favor, and directed the reinstatement of the order of the referee awarding compensation to claimant. The defendants in the district court action bring the case here on writ of error.

It is not disputed that Swort was employed by Kenyon, who was subject to the provisions of the Workmen's Compensation Act. It appears, without contradiction, that he was driving a truck belonging to Kenyon for the purpose of delivering certain machinery and equipment to Missouri Gulch, and on the return trip one Jack Carlson, operating another conveyance, ran into the rear of the truck in which claimant was riding, throwing Swort out of the truck and resulting in the injuries for which he claimed compensation. Accompanying Swort on this trip was one Brannon, and it was admitted that Brannon drove the truck on the return trip. Carlson was killed as a result of the collision. It was also admitted that Brannon was in no sense responsible for the accident. It appears that before the truck left to deliver the machinery and equipment, Mr. Kenyon asked Brannon if he would drive the truck, to which he replied in the affirmative. Kenyon then asked: "Do you have an operator's license" and Brannon said: "No, Swort does." Kenyon then asked Swort if he had an operator's license,

to which Swort replied that he did. "He then asked me [Swort] if I would drive for one day, and I told him I would, so I drove the truck to Missouri Gulch and we unloaded the equipment and came back and I hadn't ate that day, and I asked Mr. Brannon if he would relieve me as far as the city limits, and that is how he happened to be driving when the man hit us." It is further admitted that Kenyon directed the claimant Swort to bring the truck back and park it in the Kenyon yard. Claimant received compensation at the rate of $1.50 per hour for his services.

We are here called upon to determine whether the industrial commission was correct in holding that when Swort relinquished "the wheel [of the truck] to a man possessing no driver's license he stepped from the course of his employment, and that, therefore, the injury did not arise out of his employment."

Stated otherwise, the issue is whether Swort, under this record was performing service arising out of and in the course of his employment at the time of the accident. The trial court correctly determined this question.

■ Where the decision of the industrial commission is based upon improper application of the law, the district court is at liberty to set aside the award of the commission. *Meyer v. Lakewood Country Club, et al.,* 122 Colo. 110, 220 P. (2d) 371.

In the instant case the commission incorrectly applied the law to an uncontroverted set of facts.

■ We hold that when Swort, the employee of Kenyon, allowed Brannon (not an employee) to drive the truck, he, Swort, did not step from the course of his employment, but was at the time of the accident in the course of his employment. *M. & K. Corporation, et al. v. Industrial Commission, et al.,* 112 Utah 488, 189 P. (2d) 132; *Employers' Liability Assur. Corp., et al. v. Industrial Accident Commission, et al.,* 36 Cal. App. 568, 177 Pac. 171; *Byam v. Inter-State Iron Co..* 190 Minn.

132, 250 N.W. 812; *Matzek v. United Storage & Trucking Co.,* 122 Pa. Sup. 146, 186 Atl. 193.

We need not go into detail concerning the factual situation in each of these cases. A careful reading of these decisions when considered as a group announcing the prevailing rule of law, demonstrates beyond peradventure that all of the facts in the instant case are covered. In each of these cases the employee allowed a non-employee to drive a truck or automobile and the employee was injured or killed while the employer's vehicle was being thus driven. In each of these cases, in one way or another, the employer contended that the employee left the course of employment when he permitted the non-employee to drive. This contention was not upheld.

*Whiteside v. Harvey,* 124 Colo. 561, 239 P. (2d) 989, presented a situation somewhat akin to the facts in the instant case. There the employee was directed by his employer to take a truck from Denver to Greeley to get a load of potatoes. The employee allowed his father to accompany him on the trip. Somewhere between Denver and Brighton the employee became sleepy and requested his father to take over the wheel of the truck. The father was not an employee and was unfamiliar with the operation of the truck. The son fell asleep and the father negligently propelled the truck into plaintiff's building. Suit was brought by the building owner against the truck owner, on the theory that the father's negligence was imputed to the truck owner. Liability of the truck owner was affirmed in this court. We said at p. 564: "The father, as driver, here became an instrumentality in the hands of his son, and, further, the truck here involved was on a mission in the furtherance of defendant's business."

We conclude that Swort, in the instant case, was in the course of his employment at the time of the accident, which was not attributable to any negligence on the part of Swort or Brannon.

We, therefore, must also conclude that the accident arose out of his employment. *Industrial Commission et al. v. Pueblo Auto. Co. et al.,* 71 Colo. 424, 207 Pac. 479; *Aetna Life Ins. Co. v. Industrial Commission,* 81 Colo. 233, 254 Pac. 995.

Perceiving no error in the record, the judgment of the trial court is affirmed.

MR. JUSTICE HOLLAND and MR. JUSTICE HALL dissent.

MR. JUSTICE HALL dissenting.

I do not concur in the foregoing opinion for the reasons herein stated.

Most of the facts in this case are set forth in the majority opinion. However, I do feel that they are incomplete and contain one ambiguity wherein the majority opinion states:

"It appeared without contradiction that he (Swort) was driving a truck belonging to Kenyon for the purpose of delivering certain machinery and equipment to Missouri Gulch * * *."

One might conclude from this statement that Swort was actually driving the truck at the time he was injured, and clearly Swort was not driving. The majority opinion in stating the facts omits the statement made by Kenyon when he reported the accident to the industrial commission; omits the statement made by Swort when he filed his claim for compensation.

This accident occurred September 11, 1954. The law required Kenyon to file a report of the accident within ten days of its occurrence; none was filed by Kenyon until October 25, 1954. In reporting this accident Kenyon in response to question number 14:

"Describe fully how the accident occurred and what employee was doing at the time," answered:

"He was seated in cab of my truck empty returning from trip to Blackhawk when Ford auto crashed into

rear of truck throwing both men out of truck, both cab doors were thrown open, man in Ford auto was killed."

Swort, although able to return to work on November 24, 1954, did not file his claim for compensation until January 28, 1955, and in filing his claim he was required to "Describe briefly how the accident occurred." In response to this question, Swort answered:

"Was passenger in truck owned by Kenyon Machinery and truck was struck by car owned by Jack Carlson who was killed."

There is no dispute in the testimony. The evidence shows that Kenyon, the employer, first thought of employing Brannon and asked Brannon if he could drive a truck. Brannon replied in the affirmative. Kenyon then asked him if he had an operator's license. Brannon replied in the negative, and stated: "Swort does."

Thereupon, Kenyon asked Swort if he could drive a truck. Swort answered in the affirmative. Kenyon then asked Swort if he had a chauffeur's license. Swort answered in the affirmative, whereupon Kenyon *declined* to employ Brannon and did employ Swort for the period of one day to drive Kenyon's truck from his place of business to Missouri Gulch and return. Swort, accompanied by Brannon, did drive the truck to Missouri Gulch. Together they unloaded the material from the truck and started the return trip to Denver. At some undisclosed point on the return trip Swort ceased driving, turned the wheel over to Brannon and apparently remained in the cab of the truck. The only evidence in the record with reference to the change of drivers is found in this brief statement of Swort:

"I hadn't ate that day and asked Mr. Brannon if he would relieve me as far as the city limits, and that is how he happened to be driving when the man hit us."

There is not one word of testimony in this record to indicate at what point on the return trip Swort turned over the driving job to Brannon. There is not one word of testimony in the record as to what Swort was doing,

if anything, during the time Brannon was driving and at the time of the accident. Swort may have been satisfying his hunger, he may have been asleep, he may have been drunk, he may have been ill, he may have been unconscious.

There are several salient facts in this case which distinguish it from the cases relied upon in the majority opinion. The following facts are uncontradicted: (a) Kenyon stated that Swort was seated in the cab of the truck at the time Swort was injured; (b) Swort stated that he was a passenger in a truck owned by Kenyon at the time he was injured; (c) Kenyon had definitely declined to employ Brannon to drive the truck for the reason that Brannon had no chauffeur's license, all of which was well known to Swort; (d) There is absolutely no evidence to the effect that Kenyon had clothed Swort with any authority other than to drive the truck; (e) There is a total lack of evidence as to what Swort was doing during the time Brannon was driving; and (f) There is no evidence or even any intimation to indicate that Swort was in control of the truck or supervising the driving thereof.

The referee found that claimant Swort was injured: "in an accident arising out of and within the course of his employment."

On petition for review the industrial commission found: "that at the time of this injury, claimant was not performing any service for which he was employed; that in relinquishing the wheel to a man possessing no driver's license he stepped from the course of his employment, and that, therefore, the injury did not arise out of his employment."

The Trial Judge found the issues in favor of Swort and against the industrial commmission and ordered that judgment be entered in favor of Swort and against the industrial commission. To review this judgment plaintiff in error brings this matter to this court on writ of error.

The majority opinion refers to four compensation cases which it is contended hold that a person employed to drive a truck does not step from his employment when he relinquishes the wheel to another. In referring to these cases the Court says:

"We need not go into detail concerning the factual situation in each of these cases."

I respectfully submit that we should go into detail concerning the factual situations and when we do, we find that Swort can get no comfort from these cases and none of the cases are in point because of the differences in the factual situations.

The first case cited: *M & K Corporation, et al. v. Industrial Commission, et al.* (Utah, 1948), 189 P. (2d) 132.

In this case, Harries, the injured employee, was *the general superintendent* in charge of the construction of three hundred homes, and it was his duty to hire and fire, to assign work to numerous workmen; in other words he was in complete charge of the job, and while so acting had driven an M & K Corporation truck to obtain a load of material to be used on the job and on the return trip permitted his fourteen-year-old son to drive the truck. The son had no driver's license and was not an employee of the M & K Corporation. The accident and injuries occurred while the son was driving. The court in sustaining an award for the death of Harries, pointed out definitely and specifically that in instructing the son to drive, Harries was doing one of the very things he was employed to do, namely to assign work and to supervise the use and control of the trucks on this job. The Court said:

"He (Harries) was sitting on the truck beside the driver, in charge of its operation and supervising the taking of this truck loaded with materials to Logan * * * Supervising the work of others was one of the things that he was hired to do. * * * But it must always be kept in mind that the question to be determined is: Was the

employee acting in the course of his employment? And that in determining that question it is necessary to decide what was he employed to do. * * * The task which he was performing at the time of the accident was that of trucking the load of materials to his job at Logan and in so doing he was riding on the truck as he should have been and was directing the operation thereof which was in accordance with the nature of the work he was employed to do."

The facts on which the Supreme Court of Utah sustained the award of the commission are totally lacking in the case at bar. Certainly Swort was not any general superintendent. He was clothed with authority to drive the truck to a given destination and return, nothing more. There is nothing to indicate that Swort was in control of the truck or supervising the driving of it. It cannot be contended that Swort had the authority to hire or fire anyone or delegate any duties to anyone.

The next case cited is: *Employee's Liability Assurance Corporation, et al. v. Industrial Accident Commission, et al.* (Calif. 1918), 177 Pac. 171. In this case Booth, the injured employee was employed to drive a street flushing vehicle, which employment required him to drive a truck and manage the levers of the equipment flushing the streets. Booth had definite instructions from his employer to not let anyone ride with him; in violation of those instructions Booth invited a friend to ride with him and permitted this friend to drive the truck and he, Booth, continued with the work of manipulating the levers controlling the flushing equipment, and while so doing, suffered injuries. The commission and the court held that the claimant was injured in an accident arising out of and in the course of his employment. True he was not performing all of the duties delegated to him, but certainly he was performing part of the duties, and it would seem no one could successfully contend that his injuries did not arise out of and in the course of his employment. This case is no authority for holding that

Swort, who had abandoned his job completely and delegated all of the work to someone else, should recover.

The next case cited is: *Baym v. Interstate Iron Co.* (Minn. 1933), 250 N.W. 812. In this case Baym, the injured employee, was employed to do various kinds of work including acting as chauffeur for his employer as well as his employer's wife. He was instructed by the wife to obtain a car belonging to the employer and to move some furniture from Duluth to Esquagamah Lake and to place the furniture in employer's cottage and after so doing to return the car to the place where it was obtained. The wife, who gave Baym his instructions, knew that Baym was taking with him one Krause who had formerly been the employer's chauffeur, and who was an experienced driver and duly licensed. Baym drove the car to the summer cottage at Lake Esquagamah and he and Krause unloaded the furniture and took it into the cottage through the back door. After completing this work, Baym instructed Krause to drive the car around to the front of the cottage while Baym locked the doors, after locking the doors Baym returned to the car and found Krause behind the wheel, Baym got in the car next to Krause and Krause drove toward the place where the car was supposed to be returned. On the return trip while Krause was driving the car struck a bridge and Baym was injured for which he was awarded compensation by the Industrial Commission and the award was sustained by the Supreme Court of the State of Minnesota. The Court said:

"In the instant case the relator (employer) does not contend that the respondent (Baym) disobeyed orders in permitting Krause to take the wheel on the way from the cottage to the mine. He, the claimant with Krause, was to go for some furniture in Duluth, load it into the truck, take it to Esquagamah Lake, place it in Elliott's cottage there, and return the truck to the place where it was obtained in the forenoon. It evidently was a trip which required assistance and the commission could

find that it was agreeable to Mrs. Elliott that Krause, relator's former chauffeur, should accompany and assist. It could hardly be expected that with this picture before it the commission should find that respondent departed from the spirit of his employment when near the end of, perhaps a hard days' drive, he let an experienced chauffeur take the wheel, *respondent sitting beside the driver and being in charge of the car.*" (Emphasis supplied.)

It will be noted that the claimant did not delegate the duty of driving the car to one whom the employer had rejected as in the present case; he delegated that duty to Krause, a competent, licensed chauffeur, formerly employed by the employer, and the Industrial Commission and Court both found as a matter of fact that the claimant remained in charge of the car.

The other case cited: *Matzek v. United Storage & Trucking Co.* (Penn. 1936), 186 A. 193.

In this case Matzek, the injured employee, was employed as a truck driver, and while on his employer's business, took with him a former truck driver of the employer, and while performing his duties as truck driver became too sick to drive the truck, whereupon he delegated to his companion the job of driving the truck, and he himself lay down in the back end of the truck. While the companion was driving a collision occurred for which the driver was not at fault. Matzek was thrown from the truck and injured. The Commission and the Supreme Court determined that in delegating to a companion the job of driving the truck because of his illness, the claimant was acting within the scope of his employment, that he had not been instructed not to delegate some other person to drive the truck, and that in the contract of employment it was reasonable to assume that the employee, in the event of sudden illness, had implied authority to further the interests of his employer and to delegate his duties to any competent driver

then available. On that theory, and only upon that theory, was compensation allowed.

The only other case cited in support of the majority opinion is the case of *Whiteside v. Harvey,* 124 Colo. 561, 239 P. (2d) 989. This is not a workmen's compensation case but is an action to recover for damages suffered by the plaintiff by reason of the defendant's employee negligently driving employer's truck into the plaintiff's building. The employee had turned the wheel over to his father, who was not an employee; the court held that the employer was answerable for the negligence of the father, and held that the son, being the agent of his employer, could make the employer answerable for the actions of his father. This case deals with questions of negligence and agency, neither of which questions are pertinent to the case at bar. Significantly, the plaintiff is innocent of any wrongdoing. Such cannot be said for Swort.

Since the decision in the case of *Matzek v. United Storage & Trucking Co., supra,* decided in 1936, the Supreme Court of the Commonwealth of Pennsylvania has had occasion to pass upon a case, the facts of which are analogous to the facts in the case before us. See, *Ginther v. J. P. Graham Transfer Co., et al.,* 348 Pa. 60, 33 A. (2d) 923, decided in 1943.

In this case Ginther, a regular employee of the defendant, J. P. Graham Transfer Company, was instructed to make a delivery to the plant of Townsend Company at Fallston, Pennsylvania, a distance of two and one-half miles from employer's place of business. Robert D. Cooper and William Romigh, part-time employees of appellant but not on duty that evening, accompainied Ginther. On the return trip Romigh began to drive, Cooper sat in the middle and Ginther on the right side of the seat. Romigh failed to negotiate a turn in the highway and crashed into an abutment; Ginther sustained injuries as a result of which he died, his widow sought to recover workmen's compensation.

Compensation was awarded the widow by the board, the superior court reversed the decision of the Common Pleas Court of Beaver County which had set aside the award. The case was appealed to the Supreme Court. In denying compensation, the Court said:

"The evidence clearly shows that at the time of the accident a truck was being operated on the most direct route between the employer's place of business * * *. A majority of this court,. however, is of the opinion that at the time of the accident deceased had removed himself from the course of his employment by reason of his unauthorized delegation of the duty entrusted to him. When Ginther left the wheel and delegated its operation to another, he completely abandoned his most important service to the employer and was not in the course of his employment within the meaning of the Workmen's Compensation Act."

"This is not a case where an emergency had arisen from which authority to so delegate a duty may be implied. See *Matzek v. United Storage & Trucking Co. supra.* We are fully cognizant that this act is remedial and is to receive a liberal construction. * * * There are certain limitations beyond which it was not the intention of the legislature to extend responsibility of an employer for injuries sustained by an employee. The act was never intended to make the employer an insurer of the safety of all employees. The employer is not an insurer of the life and health of his employee; his liability for compensation is found only in the terms of that statute; *Lacey v. Washburn & Williams Co.* 309 Pa. 5674, 164 A. 724. To say that Ginther remained in the course of his employment under the circumstances here presented would deprive the employer of the control of his business and of the person to whom he had entrusted duties concomitant with the furtherance of that business. To permit an employee entrusted with the performance of a particular duty to delegate that duty to another when he has no authority to so delegate and no

emergency making such an arrangement necessary would tend to destroy the relation of master and servant. It would permit the employee to remove from the employer all control over that employee and his activities to which he is entitled by virtue and which is necessary to the existence of the relation of master and servant."

See, also, *Morris & Co. v. Industrial Commission, et al.*, 295 Ill. 49, 128 N.E. 727. In this case, it appears that Frank Byers, claimant, was regularly employed by Morris & Company to drive a motor truck and deliver meats from the branch market to customers, collect the money from the customers when cash was paid, turn the money into the bookkeeper at the branch market, return to the market meats not disposed of and to return the truck to the barn of the employer thus completing the day's work.

It further appears that on September 23, 1916, Byers took a load of meats from the branch market for delivery to customers, returned to the market between 2:30 and 3:30 P.M., turned over the money collected by him, unloaded the meats undisposed of, and left the branch market in the truck accompanied by one Frank Schaeffer, who was employed by Morris & Company at the branch market as a shipping clerk. The truck was driven by Schaeffer in the direction of the barn, and while the truck was so driven, Byers fell from the seat to the pavement and suffered injuries from which he died.

In denying compensation, the court said:

"The uncontradicted testimony shows Byers was not driving the truck at the time of the accident, but it was being driven by Schaeffer. Byers' employment required him to drive the truck to his employer's garage after completing his day's work. This duty he was not performing when injured, but it was being performed by Schaeffer. * * * Schaeffer drove Byer's truck, Byers sitting by his side. * * * Byers was sitting on the left or south side of the truck. * * * It must be accepted as established by undisputed proof that Byers was not driv-

ing his truck at the time he received the injury from which he died. That being so, did the injury arise out of his employment?"

"The burden is on the claimant to show the injury arose out of and in the course of the employment and the finding cannot rest on conjecture or possibility. * * * It is not sufficient that the injury arose in the course of the employment, but it must also have arisen out of the employment, and while the truck was being driven to plaintiff in error's garage, which was a duty of Byers' employment. He was not driving the truck, which was his duty under his employment, but was sitting beside another man, who was performing that duty. It is true the truck was traveling the route it would have traveled had Byers been driving, but he was not driving it, as the duties of his employment required. The decision of the question under the peculiar and unusual state of facts is not entirely free from difficulty, but as the proof shows Byers was not at the time of the injury engaged in the performance of the duties of his employment it cannot be said the accident arose out of the employment. * * * Byers had stepped outside the sphere of his employment by permitting another to perform his duties. There is no proof that the ignorance or negligence of Schaeffer in driving the truck caused the accident but he was at the time doing the work Byers was employed to do, and Byers was not engaged in the performance of any duty of his employment. It is the law that in order to make the employer liable to an employee for an accidental injury it must arise out of the employment. How, then, can it be said Byers' injury arose out of the employment when the undisputed evidence is that he was not in any way engaged in performing any duty of or connected with his employment, but his duties were being performed by another? This court must be governed by the law, and can only enforce liability under its terms and provisions."

"We have, in accordance with the objects and intent

of the Workmen's Compensation Act * * * construed it liberally in favor of the employee, but we cannot create a liability where the law creates none, and in no case have we ever held, nor would we be authorized to hold, a liability for an accidental injury to an employee which did not arise out of his employment."

"The award, and the judgment of the circuit court confirming it, are reversed."

Swort is in the unenviable position of having completely abandoned the duties for which he was employed and for which he was being paid; he had overridden the known and expressed decision and judgment of his employer, by his actions he had aided and abetted Brannon in violating the criminal statutes of the State of Colorado. He is in no position to receive compensation.

The judgment should be reversed and Swort's claim for compensation denied.

Mr. Justice Holland concurs in this dissent.