No. 24235.

GEORGE W. HATTERMAN *v.* THE INDUSTRIAL COMMISSION
OF COLORADO, ILLINOIS-CALIFORNIA EXPRESS, AND
TRANSPORT INDEMNITY COMPANY.
(467 P.2d 820)

Decided April 6, 1970.

Marvin Dansky, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Peter L. Dye, Assistant, for defendant in error Industrial Commission of Colorado.

Wormwood, Wolvington, Renner and Dosh, Byron G. Rogers, Jr., for other defendants in error.

*In Department.*

Opinion by Mr. Justice Groves.

The plaintiff in error was claimant under the Workmen's Compensation Act. His claim was reopened upon his petition for additional compensation. After further hearings the Industrial Commission declined to grant further compensation to the claimant. The district court affirmed. We sustain the affirmance.

On March 20, 1963, while in the course of his employment, the claimant was on a flat rack trailer and was struck by falling side gates, thereby causing him to be knocked to the ground. He filed a claim for compensation. On December 23, 1964, he was awarded permanent partial disability of $3\frac{1}{2}\%$ as a working unit because of a back injury. About 14 months following the accident the claimant began suffering epileptic or cerebral seizures. In November 1966, the claimant petitioned for reopening

of the claim. The petition was granted. After a hearing before a referee, the Industrial Commission refused to grant further compensation, thereby confirming the referee's determination. In October 1967, the Industrial Commission again reopened the matter upon petition of the claimant and further hearings were had. The referee and Industrial Commission again denied additional compensation, and this denial became the subject of review in the district court and here.

The issues before the Industrial Commission were whether the seizures were traumatic in origin and, if so, whether they resulted from the accident.

The referee, whose findings were confirmed by the Industrial Commission, found that, if the accident were the cause of the seizures, the claimant would necessarily have been rendered unconscious at the time; that he was not rendered unconscious; and that the seizures therefore were of an undetermined etiology.

██ There was competent testimony which supported the claimant's position that the seizures resulted from the accident. It is fundamental, however, that neither the district court nor this court can usurp the functions of the Industrial Commission and conclude that were we in its position we would grant the claimant further compensation. Rather, the only question before us on review is whether there was competent evidence to support its findings. *United Utilities & Specialties Corp. v. Industrial Comm'n,* 160 Colo. 518, 418 P.2d 896.

There was conflicting medical testimony as to whether traumatic epilepsy could have been caused by the accident if the claimant were not rendered unconscious. One medical expert expressed the definite opinion that the seizures were not traumatic if he had not been rendered unconscious. At the time of the accident in 1963, Dr. Mogens Jacobsen examined the claimant and made a written report five days later in which he stated that, "initially he was stunned but was not unconscious at any time." In 1966 and 1967, the claimant told experts who

were examining him that he had been rendered uncon-
scious at the time of the accident. It readily can be seen
that, if Dr. Jacobsen's report constituted competent evi-
dence, the referee was entitled to attach great weight
and significance to it.

The claimant argues that Dr. Jacobsen's report was not
competent evidence as it was not offered or admitted as
an exhibit at any of the hearings. Actually, the report
became a part of the Industrial Commission file on March
29, 1963. At the hearing on November 17, 1967, the
referee advised the parties that he was going to have a
further hearing on December 22, 1967, and mentioned
that counsel for the employer had asked to cross-examine
certain medical experts whose reports had been filed. He
further indicated that the parties should have "every-
thing done" by the time of the further hearing and that
he would consider all medical reports in the file. At the
last continued hearing counsel for claimant asked to be
assured that all evidence taken at prior hearings be con-
sidered by the referee. In response the referee said, "I
will read every word in the file I promise you."

Rule XX, 8(b) of the Industrial Commission's Rules
of Procedure provides as follows:

"When medical examinations are made on beha˜f of the
respondent prior to filing an Admission-Special Liability
or prior to a hearing or the entry of an order in the claim,
the reports of ALL physicians who so examined the
claimant must be filed in duplicate with the Commission.
"If either party believes that the report of any physician
so filed is adverse to his case it may elect to secure the
attendance of the physician at a hearing and to cross-
examine him upon his report."

In his brief the claimant cites *Montgomery
Ward & Co. v. Industrial Commission,* 128 Colo. 465, 263
P.2d 817. In oral argument counsel for the defendants
in error employer and insurance company stated that
*Montgomery Ward* is determinative in this matter. In
that case written reports of three medical experts, includ-

ing Dr. Gunderson, were in the Industrial Commission file. The referee requested the employer to notify him within ten days if it wished to bring any medical experts for direct testimony or, "if you wish the reports made a part of the file and an appropriate order entered." Counsel for the employer responded that he wished to present the three doctors involved for direct testimony. The attorneys for the claimant advised the referee that they did not desire to cross-examine these doctors. At the hearing the claimant did not appear and Dr. Gunderson was not called. Dr. Gunderson's report became the basis of some of the findings of the Industrial Commission. This court affirmed the findings of the Industrial Commission and said:

"Dr. Gunderson's report was not formally offered in evidence and it is contended that the Commission should not have considered it. With this we cannot agree. Dr. Gunderson was the employer's witness. The reason that an order making his written report a part of the case was not entered, was that the employer's representatives stated to the referee that they wished to present the doctor for oral examination at the hearing to be held in Denver. This they did not do. Claimant's counsel already had waived the cross-examination of this witness. Certainly no surprise can be claimed in the consideration of the Gunderson report by the Commission."

While the facts are not completely analogous, we find the reasoning and result of *Montgomery Ward* to be authority supporting the consideration of Dr. Jacobsen's report here. The above quoted rule, combined with the indication of the referee that he was going to consider the reports in the file, placed the claimant in a position from which he should not be allowed to complain now about the consideration of Dr. Jacobsen's report. He did not attempt to cross-examine Dr. Jacobsen nor prevent consideration of the report. The Industrial Commission file was available to claimant and his counsel and, under the circumstances, it was incumbent upon

him to apprise himself of its contents, if he were not already so apprised. This report, combined with testimony at the hearings, constituted sufficient competent evidence to support the findings of the Industrial Commission.

Judgment affirmed.

MR. CHIEF JUSTICE MCWILLIAMS. MR. JUSTICE KELLEY and MR. JUSTICE LEE concur.