No. 20,275.

Empire Oldsmobile, Inc., et al., v. Ralph E. McLain.
(379 P. [2d] 402)

Decided February 25, 1963.    Rehearing denied March 18, 1963.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, Mr. ALIOUS ROCKET, Mr. FRED B. DUDLEY, Mr. FRANCIS L. BURY, for plaintiffs in error State Compensation Insurance Fund and Empire Oldsmobile, Inc.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for plaintiff in error Industrial Commission of Colorado.

Messrs. WILLIAMS, ERICKSON & BROWN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THE sole question presented by this writ of error is whether the Industrial Commission, herein referred to as the commission, was correct in apportioning its award for McLain's present back injury incurred while he was working for Empire Oldsmobile, Inc., between his present injury and several prior injuries?

The record discloses that McLain injured his back in an industrial accident on May 23, 1960, while in the employment of Empire. This was the culmination of a series of accidents that had happened to McLain since 1954. In that year he was employed as a mechanic and mill-

wright in Texas and while so employed injured his back. Surgery was not required and in accord with the Texas practice McLain entered into a settlement agreement with the Texas Workmen's Compensation Board. He was awarded $4,000.00 permanent partial disability and $400.00 for temporary disability. Again in accord with the Texas practice there was no specific finding of the percentage of disability.

McLain's second accident occurred in Texas in 1956 while he was doing the same type of work. At that time he underwent two laminectomies as a result of his injury. His testimony was that these restored his back to almost the same condition it was before the first accident and he had nothing that prevented his working full time as a mechanic. His only remaining physical problem was a slight stiffness when he leaned forward. For this accident he was awarded, again under the Texas law, $1,000.00 permanent partial disability and $350.00 temporary disability.

Sometime in 1960 McLain went to work in Denver for Empire as a garage mechanic. The evidence disclosed that he was able to function adequately at his trade; the employer not being aware of any physical handicap, if any he had. In May of 1960, while assisting a co-worker in moving an automatic transmission, McLain slipped on some oil and again injured his back. He was treated by Dr. John E. Gardell an orthopedic surgeon who placed him in the hospital in traction for ten days; surgery, however, was not performed. Following this McLain was not able to return to his former trade and was, under the doctor's recommendation, to carry out a program of "guarded activity." The medical report indicated that " * * * he had to wear a back brace at all times, had a continual pain in the low back, which increased and radiated to the limbs on walking, riding in an automobile, stooping, lifting, coughing or sneezing." He can now find only occasional light work of short duration.

As a result of the 1960 accident McLain filed his claim for compensation and after a hearing was awarded 5% permanent partial disability. Contending this was insufficient and that there was error in the data relating to his weekly wage he sought a rehearing which was granted. The wage matter was corrected at that hearing and relief denied as to his percentage of disability. Seeking relief in the district court he was able to have the matter returned to the commission for further action which resulted in a reaffirmance of the 5% award. On return to the district court and upon review of the record this was set aside and the case returned to the commission with directions to enter an award of 20% permanent partial disability.

Included in the evidence adduced at the two hearings before the commission were written statements of Dr. Gardell and of Dr. Bernard C. Sherbok who had examined McLain for the second hearing before the commission; also, included is the testimony of Dr. Gardell which is pertinent.

Dr. Gardell's report stated in part: " * * * At the present time he (McLain) has a permanent partial disability of 20% as a working unit. Recognizing the fact that he had a previous injury and surgery for a low back injury in 1956 which left him with a permanent partial disability of 15%. *He may have had improvement following* this rating, but to what extent, I cannot say." (Emphasis supplied.)

Dr. Sherbok's written report concluded in part: *"It would be very difficult for me to give any accurate permanent partial disability rating which this patient has as result of the laminectomies of 1956.* * * * If the patient's history is accurate, namely that following the laminectomies he was able to return to work and that his back and leg were comfortable, *my best 'educated guess'* for permanent partial disability would not exceed 7½% * * * as a working unit."

"At present it is my opinion that this patient has 10%

permanent partial disability as a working unit of which 2½% would be fairly attributable to the injury occurring on 23 May 1960." (Emphasis supplied.)

In his testimony Dr. Gardell in referring to the last Texas incurred injury said: "He (McLain) states that the pain did not disappear, and two months later he was operated again, * * *, after which he improved, and all of the symptoms ultimately subsided. He states that he was rated a permanent disability of fifteen percent as a working unit. He states that he had no further difficulty until the accident of May 23rd, 1960."

The following colloquy appears in the record in the course of direct examination of Dr. Gardell:

"Q Doctor, would you be able to express an opinion as to the amount of permanent partial disability that pre-existed the May 23rd, 1960, disability? Or injury? A It would be an assumption."

The assumption referred to was that McLain had been correct in advising the doctor that he had a 15% Texas incurred prior disability.

It was then pointed out by counsel for McLain that the copies of the Texas reports in evidence failed to give any rating at all to his client and that McLain was in error in his statement given his doctor.

Nevertheless, Dr. Gardell testified that McLain had a present 20% disability "as he stood right in front of me, regardless of how many accidents he may have had. And *assuming* that he had a fifteen percent permanent partial disability existing prior to his injury, I felt by simple mathematics that it was fifteen, now he is twenty."

Further light is shed on this point by the following cross examination of Dr. Gardell:

"Q. Yes sir. This (the 15% prior rating) wasn't based upon any objective findings? A. Well how could I rate him on what he was before I ever saw him?

"Q. Well this is the point I am trying to make, Doctor. I agree with you. I don't think you could. Do you

agree that you could not, and you cannot at this time, express an opinion as to his disability pre-existing his accident of May 23rd, 1960, other than from statements which he made to you by way of his history? A. That's right.

"Q. And such opinion then concerning his pre-existing disability would be correct only insofar as any statements which he made to you were correct, is that true? A. Yes.

"Q. Doctor, what rating does a person generally and usually receive by way of permanent and partial disability who has had a successful laminectomy, and has no back or spinal difficulties following such laminectomy? A. Well in my own experience I have had a few young individuals whom I rated as not having any disability, and then you can go from there on up. I have seen some as high as twenty, twenty-five percent.

"Q. Even though they have no complaints or difficulties following the laminectomy. A. No, I wouldn't mean it that way.

"Q. That was part of my question. But if it is a successful laminectomy, and the patient has no difficulties or complaints following the laminectomy? A. Generally, I feel that in an older individual you have disturbed the mechanics enough there that he will run about five percent as a working unit disability."

Our examination of the record confirms what should be obvious from the above facts, and that is, that the commission in arriving at its 5% award had subtracted 15% for asserted prior disability from the 20% present confirmed disability. In this it was in error for the following reasons:

1. The findings of fact of the commission as to a 5% disability is not supported by the record in that there is no competent evidence that the Texas commission had ever rated McLain 15% or any other degree of permanent partial disability which could be subtracted from the acknowledged 20% present disability.

2. Dr. Gardell admitted, in trying to arrive at a prior degree of disability, that he could not say to what extent McLain had improved after his last operation in Texas; yet he was willing to accept McLain's statement of its being 15%; and, Dr. Sherbok's report said it was very difficult to rate McLain after the same operation but that on his "educated guess" would rate his prior disability at 7½%. Obviously, the commission followed only Dr. Gardell's analysis for it arrived at a 5% final figure.

3. The relevant testimony is that of McLain himself that he had fully recovered as a working unit; so, whatever the degree of then disability the Texas awards had been made on were immaterial here.

4. In *Mathews v. Ind. Com.*, 144 Colo. 146, 355 P. (2d) 300 (1960), which we reaffirm, we laid down the principle that allocation to previous injuries cannot be on an arbitrary basis of assumptions or guesses as was attempted here.

5. Here we have a claimant who though once injured and paid for that disability on a permanent basis, nevertheless, had fully recovered as a working unit when he was employed by Empire, so is entitled to full benefits provided by our statutes.

6. Even if the commission and Empire were correct that McLain suffered from a prior back condition at the time of his last accident, this record would then show an aggravation of such pre-existing condition by the 1960 accident, for which they would also be liable. *Vanadium Corp. v. Sargent,* 134 Colo. 555 at 562-63, 307 P. (2d) 454 (1957). For here there was certainly a causal connection between the last accident and McLain's 20% disability.

The judgment of the trial court is affirmed.

MR. JUSTICE MCWILLIAMS and MR. JUSTICE PRINGLE concur.