No. 21843.

UNITED UTILITIES AND SPECIALTIES CORPORATION, AND
MARYLAND CASUALTY COMPANY *v.* INDUSTRIAL
COMMISSION OF COLORADO AND DAVID L. HAYES.
(418 P.2d 896)

Decided September 26, 1966.     Rehearing denied October 31, 1966.

MARGARET R. BATES, for plaintiffs in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

TILLY & GRAVES, DARRELL J. SKELTON, ISAAC S. WILLSON, for defendant in error David L. Hayes.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

THIS is a workmen's compensation case and the interested parties will be referred to herein as follows: David L. Hayes, as the employe; United Utilities and Specialties Corporation as the employer; Maryland Casualty Company as the carrier; and the Industrial Commission of Colorado as the Commission.

The employe, a six foot, three inch, fifteen year old boy, fell off an eight-foot stepladder while stacking empty boxes on a shelf for his employer. Just before his fall, the employe was standing on the very top of the ladder, with his head therefore some fourteen feet above the floor. Somehow the employe slipped while attempting to place one foot onto the shelf proper, and he fell to the concrete floor. The employe was rendered unconscious by the fall. Upon regaining consciousness, his initial complaints concerned only injury to his knee and back. As of that time he made no specific complaint of any head injury.

The employe was taken directly to the hospital immediately after this mishap, and after receiving emergency treatment he was later taken to the office of his own doctor. The employe was off work as a result of injuries sustained in the fall for approximately seven to ten days, when he then returned to work, at least on a part-time basis.

About three weeks after the fall, the employe first began to experience severe headaches. A few days thereafter he "passed out" and without going into detail he very quickly otherwise exhibited numerous symptoms of brain injury. And therein lies the root of the present controversy. The employer and its carrier admit that the employe suffered injury to his knee and back as the result of an accident arising out of and in the scope of his employment, but deny that he suffered any brain injury in the fall.

After full hearing before the Commission, with many medical experts testifying in behalf of both the employe and the employer, the Commission found that the employe did sustain a post concussive syndrome in the aforementioned fall from the ladder and awarded the employe those benefits which flowed from such determination.

The employer and its carrier sought judicial review of this award, which after hearing was approved and affirmed by the trial court. It is this judgment approving the action of the Commission which the employer and its carrier now seek to have reversed.

The basic position of the employer is that there is insufficient evidence to support the finding of the Commission that the employe suffered brain injury as a result of his fall from the ladder. In support of this position the employer's argument runs somewhat as follows: (1) there being no eyewitnesses to the fall, no one could or did testify that the employe in any manner struck his *head* in the fall; (2) the employe himself shortly after the accident complained only about an injury to his knee and back, and made no complaint as to any sort of a *head* injury until much later; *ergo* (3) the employe, not having suffered any *head* injury, could not have, and in fact did not suffer any *brain* injury as the result of the fall.

The employe counters this argument by admitting that though there perhaps was no direct evidence of

any external injury to the head, such was nonetheless established circumstantially, if not directly. In this regard considerable stress is placed on the undisputed fact that the employe was rendered unconscious in the fall, and remained in this condition for several minutes thereafter. Finally, the employe points out that he offered much medical evidence to the effect that in order to prove brain injury it is not necessary to establish an external physical injury to the head proper. This testimony was to the effect that the brain could, and in this case did, suffer injury due to a violent and sudden movement and motion of the head, even though the head proper did perhaps not itself suffer any external blow or injury.

■■ In our view no good purpose would be served by reciting the medical testimony which was adduced upon hearing before the Commission. Suffice it to say, that such testimony was very exhaustive and in some particulars very conflicting. Under all these circumstances the issue as to whether the employe suffered brain injury in the fall was most definitely an issue of fact, and we find much evidence in the record to support the determination made by the Commission. This being the case, we are not at liberty to in any manner "second guess" the fact-finding body and substitute our judgment for that of the Commission. A finding of the Commission based on conflicting evidence is binding on courts of review. *Century Indemnity Company v. Klipfel*, 99 Colo. 213, 61 P.2d 842. Accordingly, we hold that the finding of the Commission that the employe suffered brain injury as the result of an industrial accident cannot upon review be disturbed by us.

■ The employer also complains about the amount of the award made by the Commission. In this regard the Commission ruled that the employe should receive until further order of the Commission the sum of $33.33 per week for his temporary total disability. This figure represented two-thirds of the employe's weekly wage,

as such weekly wage was computed pursuant to the provisions of C.R.S. 1963, 81-8-1(3)(d) and (e). The employer contends that as applied to the instant case this statutory method of computing one's weekly wages is improper.

The employer's argument in this regard is that the employe was only hired to work three days per week, eight hours per day, at a pay rate of $1.25 per hour. It is pointed out on this basis the employe's weekly wages would be only $30, whereas his disability benefits were fixed at $33.33 per week. In our view the employer's initial premise that the employe was only hired for a twenty-four hour work week is simply not borne out by the record. The employer himself testified that if the employe was "needed" he would be "called in for longer periods of time." As we understand the record, in the several weeks preceding the accident the employe did work, in one instance, 39 hours during a particular week, and during another week he worked some 38 hours. We accordingly find no error in the manner in which the Commission computed the amount of the employe's disability benefits.

Finally, the employer, and more specifically the carrier, complains about that portion of the Commission's award holding them liable for the medical, surgical and hospital expense attendant to the diagnosis and treatment of the brain injury which the Commission decreed resulted from the fall. Much of the argument advanced in support of this particular point is rendered unavailing by our earlier determination that the Commission's finding that the employe suffered brain injury in the fall must be upheld. This, in our view, is simply not an instance where the injured employe went out on his own and submitted to unauthorized medical treatment, and then attempted to hold the employer and its carrier liable therefor. Rather, we are dealing with a fifteen year old boy who about three weeks after the accident began to show symptoms of serious brain

injury for which he obtained appropriate medical services for purposes of diagnosis and treatment.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur.