No 22984.

THE COLORADO FUEL AND IRON CORPORATION (NOW CF&I STEEL CORPORATION) *v.* BERT O. RHODES AND THE INDUSTRIAL COMMISSION OF COLORADO.
(441 P.2d 652)

Decided June 10, 1968.

WELBORN, DUFFORD & COOK, ELMER P. COGBURN, CHARLES H. GROVES, JOHN F. BRAUER, for plaintiff in error.

EDWARD J. SCHEUNEMANN, for defendant in error Bert O. Rhodes.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

THIS is a workmen's compensation case and some background material is essential if there is to be an adequate understanding of the controversy.

Bert O. Rhodes, hereinafter referred to as the claimant, was employed by the Colorado Fuel & Iron Corporation, which company will be hereinafter referred to as the employer. On September 15, 1953 the claimant in the scope and course of his employment sustained an injury to his back. Some time later a laminectomy was performed and thereafter on July 8, 1955 the claimant received a compensation award based on a finding of permanent partial disability to the extent of 7½% as a working unit. No appeal from this award of the Commission was taken by either the claimant or his employer.

In 1957 claimant petitioned to reopen his case on the ground that his condition had worsened. After hearing, the Commission denied the petition to reopen, finding in connection therewith that though claimant's condition had in fact "worsened somewhat," the claimant had refused a second operation which would have "reduced, or returned," his disability to 7½%. No appeal was taken from this particular order of the Commission.

The claimant thereafter continued in this particular employment without further incident or accident until March 18, 1964. On that date he allegedly again suffered injury to his back in an industrial accident, for which he made claim on May 21, 1964. More specifically, claimant stated in this claim for compensation benefits that in unloading "cap-pieces and wedges" he picked up a bundle of wedges weighing about 35 pounds and "pitched it up and to the left and felt a sharp pain in his back." As a result of the accident of March 18, 1964, claimant made claim for permanent partial disability, with the employer in turn denying that the claimant sustained *any* permanent partial disability as a result of this particular accident.

Upon hearing of the matter the Commission found that as a result of the industrial accident occurring on

March 18, 1964 the claimant did sustain permanent partial disability and that he was entitled to compensation for such permanent partial disability to the extent of 7½% as a working unit.

This award of the Commission was then appealed by the employer to the Denver District Court. Upon hearing the trial court first remanded the matter to the Commission with the direction that the Commission comply with C.R.S. 1963, 81-8-2(2). This statute reads in part as follows:

"(2) In case there is a previous disability, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability *as it existed at the time of the sub-. sequent injury.*" (Emphasis added.)

In response to this remand the Commission thereafter entered the following supplemental order:

"It is further found that claimant is now permanently and partially disabled to the extent of 15% as a working unit. That although claimant is now disabled to the extent of 15% as a working unit, 7½% of that disability is on account of permanently partial disability previously awarded to claimant by this Commission and directly attributable to claimant's accident of September 14, 1953 and that only 7½% of claimant's permanent disability is directly attributable to the accident of March 18, 1964."

Accordingly, the Commission again ordered payment of compensation benefits for permanent partial disability sustained in the 1964 accident on a finding of 7½% disability as a working unit. The matter was then returned to the Denver District Court which upon review approved and affirmed this order of the Commission. By writ of error the employer now seeks reversal of the judgment thus entered by the trial court.

The basic position advanced here by the employer is that there is *no* evidence that *any* of the claimant's present permanent partial disability resulted from the

1964 accident and that the employer should not therefore be ordered to pay *any* award for permanent partial disability as a result of the 1964 accident. As a corollary of the foregoing, the employer would appear to contend that the claimant's present degree of permanent partial disability results entirely from the 1953 accident, for which claimant has already been compensated. In our view the employer's position on this particular phase of the case, at least, is not well taken and we shall now develop our thoughts on the matter.

■ The fact that the claimant in 1953 suffered disability and in 1955 received compensation therefor does *not* preclude him from receiving compensation benefits for a later or subsequent injury resulting from a second industrial accident. C.R.S. 1963, 81-8-2(2). To the contrary, the applicable statute clearly recognizes that even though an employee has suffered a previous disability and even received compensation therefor, he is nonetheless entitled to also receive compensation for a subsequent or later injury sustained in a second industrial accident. And the statute under consideration goes on to spell out just how the percentage of disability for the subsequent injury shall be determined, namely, *by computing the percentage of entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.* C.R.S. 1963, 81-8-2(2).

As above noted, the employer urges that there is *no* evidence that the claimant suffered *any* degree of permanent partial disability in the accident occurring on March 18, 1964. What does the record disclose in this regard?

Upon hearing of the matter claimant testified that though his back condition "worsened" in 1957, his condition thereafter improved. He recounted how from 1957 till March 18, 1964 he continuously performed "heavy work" for his employer, "without a back difficulty."

Claimant then explained the accident of March 18, 1964 and resultant "new" injury to his back.

One doctor, who had examined the claimant in 1955 and 1957 and again on several occasions subsequent to the accident of March 18, 1964, testified that as of the date of his last examination claimant had permanent partial disability to the extent of 15% as a working unit. Our appraisal of this doctor's testimony indicates that in the doctor's opinion, at least, claimant's back condition had improved somewhat during the period from 1957 to March 18, 1964 and that the claimant's back condition "was undoubtedly aggravated by the new injury." This doctor pointed out that as a result of the 1953 accident claimant's symptoms were confined to the *right* leg, whereas the 1964 accident produced symptoms, namely, nerve root pressure, located primarily in the *left* leg. Without going into greater detail, we conclude that there is evidence to support the Commission's finding that claimant did sustain at least some degree of permanent partial disability in the accident of March 18, 1964.

The employer also complains about the manner in which the Commission determined that the percentage of permanent partial disability resulting from the 1964 accident was 7½% as a working unit. In this connection the employer points out that the very doctor who testified that claimant's permanent partial. disability *after* the 1964 accident was 15% as a working unit, had also testified in the 1957 hearing concerning claimant's position to reopen that claimant's disability as of that time was 15 to 20%. Therefore, argues the employer, it was error for the Commission to only deduct from the 15% disability figure, which the Commission found to be the percentage of *entire* disability *after* the second accident, the percentage award granted claimant in 1955, namely 7½%. According to the employer, the Commission should have deducted the 15% disability figure which was testified to by at least two doctors in the 1957 hearing, and

then it would have come up with a so-called "zero award." We do not agree with the employer's argument that the fact that two doctors testified in 1957 that claimant then had at least a 15% permanent partial disability somehow completely defeats his present claim for compensation. However, we do agree that the Commission has not yet followed the provisions of C.R.S. 1963, 81-8-2(2), even though ordered to do so by the trial court.

█ The Commission's supplemental order entered by it upon remand from the trial court is set forth above. Our study of that order reveals that the Commission found that as of the date of the hearing into the accident of March 18, 1964 claimant was then permanently partially disabled to the extent of 15% as a working unit and, as we have already indicated, in our view there is evidence to support this particular finding. However, it would appear to us that the Commission then arbitrarily deducted therefrom the percentage award made in 1955, which award was based on a finding of permanent partial disability to the extent of 7½% as a working unit. As we read this supplemental order of the Commission, there is still no express finding as to the percentage of the previous disability "as it existed at the time of the subsequent injury." It is this percentage which, according to the statute, is to be deducted from the percentage of the entire disability.

█ The fact that claimant in 1955 received an award for permanent partial disability based on a finding of 7½% disability as a working unit, does not necessarily mean that such percentage of disability existed at the time of the subsequent injury. This percentage of disability, of course, could have existed as of March 18, 1964, or it could have been even greater, or it could have been less. And the statutory test is the percentage of the previous disability existing as of the time of the subsequent injury, not the percentage of previous dis-

ability as it existed some nine years prior to the subsequent injury.

 Similarly, the fact that two doctors at the 1957 hearing testified that claimant then had a permanent partial disability to the extent of 15% as a working unit does not prove that such percentage of permanent partial disability existed as of the moment before the accident occurring on March 18, 1964. Repeating, we are not concerned, as such, with claimant's percentage of permanent partial disability as it existed in 1957. What we are to be concerned with is the percentage of the previous disability as it existed at the time of the subsequent injury.

Accordingly, the judgment of the trial court affirming the award of the Commission (based on a determination of 7½% permanent partial disability) must be reversed and the trial court should again remand the case to the Commission with direction that the Commission reopen the matter and allow the employer or the claimant, if either be so inclined, to introduce such evidence *only* as bears upon the percentage of disability resulting from the 1953 accident "as it existed at the time of the subsequent injury." Of course, any subsequent determination by the Commission which would justify a deduction from the percentage of the entire disability, which in the instant case is 15% as a working unit, must be based on competent evidence and may not be based on conjecture or guess. See *Empire, Inc. v. McLain,* 151 Colo. 510, 379 P.2d 402, and *Mathews v. Ind. Comm.,* 144 Colo. 146, 355 P.2d 300.

The judgment is reversed with further proceedings before the trial court and the Commission to be consonant with the views herein expressed.

Mr. Justice Pringle and Mr. Justice Hodges concur.