Richard ANAYA, Plaintiff,

v.

Louis W. SULLIVAN, Secretary of
Health and Human Services,
Defendant.

Civ. A. No. 91–K–615.

United States District Court,
D. Colorado.

Dec. 10, 1991.

Larry J. Rodriquez, Colorado Springs,
Colo., for plaintiff.

George E. Gill, Asst. U.S. Atty., Denver,
Colo., for defendant.

## ORDER AND JUDGMENT

KANE, Senior District Judge.

Richard Anaya is a sixty year old man.
For all of his working life he was a skilled
tradesman and artisan. He worked as a
printer on "The Pueblo Chieftain." His job
was to paste-up and lay-out the newspaper.
It was a highly satisfying job with which
he was very happy, so much so, that he

worked for the same paper for his entire working life, from 1955–1988.

In 1988 he began to suffer severe health problems and had to leave his job. He began to suffer persistent dizzy spells, a loss of vision which was highly detrimental to his work. Above all he was diagnosed as suffering from a serious heart condition, he had aortic stenosis and coronary heart disease. He had to have a vein removed from his left leg and open heart surgery. A porcine valve was inserted in his heart; the valve will last for an estimated twelve years.

Since 1988 his health problems have been a severe impediment to his gaining further employment. He suffers increasingly from the dizzy spells, he has great difficulty lifting, he frequently has numbness in his left arm, his mental acuity has decreased and he is prone to forgetfulness or to frequent misspellings of basic words. This latter point is particularly poignant, in view of his former job as a printer. A substantial part of his work consisted of correcting and amending infelicities of language and misspellings.

There is no scope and no evidence for asserting that Richard Anaya is lying or distorting the very serious nature of his health problems. He is clearly a very sick man with a limited life expectancy, yet the Administrative Law Judge (ALJ) refused to accept that he was disabled.

The ALJ concedes that the claimant has severe impairments but asserts that they do not "meet or equal" the listing requirements for ischemic heart disease. See 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1 § 4.04 (1991). He states that there is no evidence of any significant impairment since the claimant underwent surgery.

The ALJ then proceeds to consider whether the claimant has "residual functional capacity." He lists the claimant's various disabilities and concludes on the preponderance of the evidence that the claimant does have the ability to perform "medium work activity." "Medium work requires lifting up to a maximum of 50 pounds with lighter lifting and walking and/or standing for six hours out of an eight hour day with the opportunity for occasional breaks." See 20 C.F.R. § 404.-1567(c) (1991). The ALJ also makes the significant finding that "[t]he claimant has been looking for work, but has not been hired." See 42 U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 404.1566.

The ALJ's holding hinges on a series of "framed" hypothetical questions which he put to a vocational expert. Essentially the ALJ adduces from the medical evidence the following conclusions of fact: that the claimant is not impaired in the use of his hands, his fingers, his wrists, his neck, his eyes, or his ears. (Id. at 55–56.) Further, he concludes the claimant would be regularly able to lift twenty-five pound objects, sit for at least two hours at a time, and in a typical eight-hour day, sit for a total of six hours.[1] The ALJ also asks the vocational expert to assume that the claimant would be able to stand for two hours at a time, and in an eight-hour work day would be able to stand for up to four hours. Other assumptions that the ALJ asks of the vocational expert are that the claimant would be able to walk for a total of three hours a day, be able to bend, be able to use his right and left hand for simple and fine

---

**1.** The ALJ later changes this requirement to being able to sit for an hour at a time, and during a regular work day for a total of three hours during an eight-hour shift. The reason for his doing this is that the vocational expert is unenthusiastic about the claimant's transferable skills that would enable him to do a sedentary job in the printing trade. The only transferable jobs were in the light to medium range. The following dialogue then ensues:

Q: Alright. So they exist at the light range, is that correct?
A: Primarily in the light to medium range, Your Honor, yes.

Q: Light to medium, alright. Now, if I would now change the sitting to being able to sit for 1 hour at a time, and during a regular work day for three hours, during an eight hour shift, would that have any effect on his past work?

. . . . .

A: That would change the printing press and press operations. I still believe paste-up and layout will allow him to alternate sitting and standing. (Id. at 57.)

The ALJ is engaged in tailoring his questions in order to reach a preordained conclusion.

manipulation, be able to push and pull with his right and left hand, and be able to use his feet for the operation of foot controls. (*Id.* at 56.)

Finally, the ALJ concedes that the claimant would have to be restricted from unprotected heights, marked changes in temperature and humidity, exposure to dust, fumes, noxious gases and dangerous machinery. (*Id.* at 56.)

These framed hypotheticals enable the ALJ to elicit the desired response from the vocational expert that the claimant would be able to work as a paste-up and lay-out operator for a smaller printing shop and that, despite his dizziness and vision problems, the claimant would be able to perform his previous job as a printing press operator. The ALJ concludes that "the claimant retains the ability to perform either his past relevant work or lighter work as described by the vocational expert." *Id.* at 9.)

■ The role of a reviewing court in an action under § 205(g) of the Social Security Act is quite limited. Considerable latitude is given to a decision of an ALJ; *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir.1977). A court will not substitute its own discretion for the ALJ's, *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir.1983). However, the ALJ's decision must be based on substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). A mere scintilla of evidence will not suffice. *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427; *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989). The evidence must not be overwhelmed by other evidence, *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir.1990), or be such as to constitute mere conclusion, *Ray v. Bowen*, 865 F.2d at 224. It must be of such cogency that, to a reasonable mind, it is adequate to support a conclusion. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir.1987); *Teter v. Heckler*, 775 F.2d 1104, 1105 (10th Cir.1985). Courts will not permit the ALJ to search the record for isolated scraps of evidence which support his conclusion; the record as a whole must be considered. *Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir.1987); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985).

■ The criteria contained in the listing for "ischemic heart disease" are more than made out. The ALJ recognizes that the claimant had unstable angina, coronary heart disease, aortic stenosis, and premature ventricular contractions. There was no substantial evidence to conclude that the claimant did not satisfy the listing for ischemic heart disease.

■ In the alternative, even if Anaya's condition does not meet the listing, he lacks the "residual functional capacity" to work. As I have indicated earlier, the ALJ put framed questions to the vocational expert. There was no substantial evidence to justify his findings, inter alia, as to the claimant's lifting, mobility capacities and fine hand manipulations. The ability of a claimant to engage in sporadic or household activities does not mean that he possesses the residual functional capacity for substantially gainful activities: *See Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987); *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir.1979). A reading of the record indicates that such is the summa of his present capacities.

On a side issue, the claimant seeks to submit in evidence, on appeal, the testimony of a Dr. Hartley not included in the trial record. The respondent argues that *Mann v. Gardner*, 380 F.2d 182 (5th Cir.1967), and *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir.1972), establish that this court's review is confined to the record. This is substantially correct: "the reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence." *Huckabee*, 468 F.2d at 1318; In *Mann*, the court indicates that although it would not review the evidence not on record in determining the substantial evidence criteria, it could gauge the import of the document, particularly in view of the specific finding made to the contrary by the hearing examiner in that case. 380 F.2d at 187. Such considerations seem

equally applicable to the decision of the ALJ in this case, but given the absence of substantial evidence in the record to support the Secretary's decision such is not necessary. The decision of the Secretary is reversed.

Judgment is entered in favor of the plaintiff and against the defendant. Plaintiff is entitled to costs herein.