**COATES, REID & WALDRON; Colorado Compensation Insurance Authority; The Industrial Claim Appeals Office of the State of Colorado; and Director, Division of Labor, Department of Labor and Employment, Petitioners,**

v.

**Maria VIGIL, Respondent.**

**No. 92SC489.**

Supreme Court of Colorado, En Banc.

July 26, 1993.

Michael J. Steiner, Jeanne Labuda, Asst. Atty. Gen., Denver, for petitioners.

Withers, Siedman & Rice, P.C., Gudrun Rice, Grand Junction, for respondent.

Justice SCOTT delivered the Opinion of the Court.

Petitioners Coates, Reid & Waldron, the Colorado Compensation Insurance Authority, the Colorado Industrial Claim Appeals Office, and the Director of the Department of Labor & Employment seek our review of

a decision by the court of appeals, *Vigil v. Industrial Claim Appeals Office*, 841 P.2d 335 (Colo.App.1992), which held that the Industrial Claim Appeals Panel's (Panel) final order affirming the order of the Administrative Law Judge (ALJ) was not supported by the applicable law. The ALJ and the Panel determined respondent Maria Vigil's (Vigil) workers' compensation benefits based upon her average weekly earnings for a second, lower-paying temporary employment position, in lieu of also considering those wages earned at the time of Vigil's earlier, higher-paying permanent work position. The court of appeals held that the ALJ's method of determining Vigil's disability benefits did not fairly compensate her for her work-related injuries and therefore, the ALJ should have exercised the discretion accorded him under section 8–47–101(4), 3B C.R.S. (1986) (now codified at section 8–42–102(3), 3B C.R.S. (1992 Supp.)), to compute Vigil's benefits in a more equitable manner; specifically, that court held that the ALJ should have calculated Vigil's compensation benefits based upon her average weekly wage in effect at the time of her first employment assignment, rather than her second assignment.

We find that the record fails to indicate if, in computing Vigil's benefits, the ALJ considered whether employing her average weekly wage based upon her second, lower-paying temporary position produced an equitable result. We therefore find that the ALJ's order is inconsistent with section 8–47–101(4), a statutory provision which accords an ALJ broad discretion in situations where the standard methods of computing the average weekly wage of the injured employee are inequitable. Accordingly, we affirm the court of appeals decision setting aside the Panel's final order, on the ground that the basis for that order is not supported by the applicable law. We also find, however, that the court of appeals erroneously substituted its judgment for that of the ALJ when that court specifically directed the ALJ to calculate Vigil's compensation award based upon her average weekly wage earned during her first employment position. Thus, without setting out the precise computational method to be employed by the ALJ in his formulation of Vigil's compensation award, we direct the court of appeals to remand the cause to the Panel with instructions to remand to the ALJ for a re-calculation of Vigil's benefits in a manner that will assure a fair and equitable result, pursuant to the discretion accorded an ALJ in section 8–47–101(4).

## I.

In 1980, respondent Maria Vigil became employed as a maid/housekeeper for petitioner Coates, Reid & Waldron, an owner of vacation condominiums. In September, 1987, Vigil sustained a work-related injury; at the time of the injury, Vigil's average weekly wages were roughly $418.00 per week. After a period of temporary total disability, Vigil returned to work at Coates, Reid & Waldron, but because her work-related injuries precluded her from continuing her work as a maid/housekeeper, in January, 1988, she was assigned to work as a laundry worker, performing light-duty tasks only. In this employment capacity, Vigil earned approximately $290.00 per week, a nearly 31% decrease in earnings from that earned as a maid/housekeeper. A few months later, in March, 1988, Vigil incurred a second work-related injury, and as a result of this injury, was unable to return to work in any capacity.

Vigil subsequently filed for workers' compensation disability benefits and was awarded temporary total disability benefits based on her wages at the time of her original injury. Vigil reached maximum medical improvement from both injuries in August, 1990. In September, 1990, the ALJ ruled that Vigil suffered from a permanent total disability as a result of the two injuries. The ALJ specifically found that

upon a consideration of all the evidence ... the claimant's original injury contributes to the claimant's permanent total disability at the rate of 80% and ... the [second injury] contributes to the claimant's permanent total disability at the rate of 20%.

The claimant's average weekly wage at the time she sustained injuries from the [second injury] was $290.00. *Since it has been determined that the [second injury] contributed to her permanent and total disability,* it is concluded that her average weekly wage for the computation of permanent total disability benefits is $290.00.

(Emphasis added.) Presumably, the ALJ's basis for employing the amount of Vigil's weekly earnings at the time of her second injury for the purpose of computing Vigil's permanent and total disability compensation was section 8–47–102(1), 3B C.R.S. (1986) (now codified with changes at section 8–42–104(1), 3B C.R.S. (1992 Supp.)). That section provides that, for purposes of determining compensation for a *later,* independent industrial injury incurred by a worker, the ALJ is to apply the average weekly wage earned by the worker at the time of that later injury.[1]

Vigil subsequently sought review of the order of the ALJ, contending first, to a Panel of the Industrial Claim Appeals Office, that she was entitled to permanent partial disability benefits for her disability resulting from the original injury, in addition to the permanent total disability benefits, and next, that in any event, her benefits should be computed in a manner that would fairly compensate her for her loss of wage-earning capacity resulting from her first injury. The Panel disagreed with Vigil and affirmed the ALJ's order on the grounds that

> at the time [Vigil's] condition attributable to the first injury stabilized, she became eligible for an award of permanent total disability. Hence, she is not entitled to a separate award for permanent partial disability. The rationale for this holding is that "at a given moment in time, a person can be no more than totally disabled." *Kehm v. Continental Grain,* quoting 2 A. Larson, *The Law of Work-*

*men's Compensation,* section 59.41 (1986). The fact that the claimant returned to work with a substantial wage loss after her first injury thereby reducing her rate of compensation for permanent total disability does not alter the result that she may not be compensated for more than she is entitled to for her permanent total disability.

Vigil then appealed the Panel's decision to the court of appeals. That court agreed with the ALJ and the Panel that Vigil was not entitled to concurrent permanent partial and permanent total disability benefits, inasmuch as "an injured worker with successive injuries may not receive permanent partial disability benefits once payment of permanent total disability benefits commences." *Vigil,* 841 P.2d at 336 (citing *Kehm v. Continental Grain,* 756 P.2d 381 (Colo.App.1987)).[2] Notwithstanding this conclusion however, the court of appeals set aside the final order of the Panel on the grounds that

> [t]he unique factual situation presented here demonstrates that the standard method of determining [Vigil's] average weekly wage was unfair. First, [her] earnings at the time of her first injury were much higher than at the time of her second injury. Second[ ], the ALJ specifically found that the bulk of claimant's permanent total disability was attributable to the first injury. Third, claimant reached maximum medical improvement as to both injuries at the same time, which prevented her from receiving permanent partial disability benefits for her first injury. These factors demonstrate that the computation of claimant's permanent total disability based on her average weekly wage at the time of her second injury did not fully compensate claimant for her industrial injuries. We note also that both injuries were sustained while the claimant was working for the same employer. We conclude,

---

1. *See* § 8–47–102(1), 3B C.R.S. (1986), stated in its entirety, *infra,* at page 855.

2. In *Kehm v. Continental Grain,* 756 P.2d 381 (Colo.App.1987), a panel of the court of appeals held that where a workers' compensation claim-

ant has suffered two successive compensable injuries and is awarded permanent total disability benefits, any prior awards for permanent partial disability should terminate on the commencement date of the permanent total award.

therefore, that [Vigil] will be more fairly compensated by basing her benefits on her average weekly wage at the time of her first injury.

*Vigil*, 841 P.2d at 337. As authority for its decision, the court of appeals cited section 8–47–101(4), 3B C.R.S. (1986) (now codified at section 8–42–102(3), 3B C.R.S. (1992 Supp.)), which accords discretion to an ALJ to use whichever calculation variables are indicated, if the standard method of computing an injured worker's average weekly wage does not fairly compensate the worker.[3] The court of appeals thus concluded that because Vigil "will be more fairly compensated by basing her benefits on her average weekly wage at the time of her first injury," *Vigil*, 841 P.2d at 337, the Panel "abused its discretion in not applying section 8–47–101(4) in computing" Vigil's average weekly wage. *Id.* That court then remanded the cause to the Panel with directions that the Panel remand the matter to the ALJ so that the ALJ could recompute Vigil's permanent total disability benefits based solely on her average weekly earnings in effect at the time of her first injury.

Petitioners then sought review by this court of the court of appeals decision, arguing that an ALJ may not deviate from the statutory directive to compute permanent and total disability benefits based on the average weekly wage in effect at the time of the injury giving rise to that award, except in limited instances. The petitioners further argue that the facts in the instant case do not fall within the exception because "courts have consistently limited [this exception] to cases where a claimant is paid not based on a set salary, but rather on a piecework, tonnage, commission or basis other than a monthly, weekly, daily, or hourly wage."

We granted certiorari to determine first, "whether the court of appeals erred in concluding that the [ALJ] abused his discretion in failing to exercise the discretion

delegated to him under section 8–47–101(4), 3B C.R.S. (1986)," and next, "whether the court of appeals erred in directing [the ALJ] to recompute [Vigil's] permanent total disability benefits based on her average weekly wage at the time of her first injury when [Vigil] suffered loss of her wage-earning capacity as a result of two disabling injuries."

## II.

### A.

■ The formulae to be employed in calculating compensation payments to injured workers are set out, in part, at sections 8–47–101 and –102, 3B C.R.S. (1986) (now codified with changes at sections 8–42–102 through –104, 3B C.R.S. (1992 Supp.)).[4] Specifically, that statutory scheme establishes the parameters for computing the "average weekly wage" of an industrially-injured employee, a sum that is then used in the final determination of the employee's disability compensation. As a starting point, section 8–47–101 provides in relevant part that

(1) The average weekly wage of an injured employee shall be taken as the basis upon which to compute compensation payments.

(2) Whenever the term "wages" is used, it shall be construed to mean the money rate at which the services rendered are recompensed under the contract of hire in force at the time of the injury, either express or implied[.]

(3) Average weekly wages for the purpose of computing benefits ... shall be calculated upon the ... weekly ... remuneration which the injured ... employee was receiving at the time of the injury ...:

.     .     .     .     .

(3)(b) Where the employee is being paid by the week for his services under a

---

**3.** *See* § 8–47–101(4), 3B C.R.S. (1986), in full, *infra*, at page 855.

**4.** Articles 40 to 54 of title 8 were entitled the "Workmen's Compensation Act of Colorado."

§ 8–40–101, 3B C.R.S. (1986). After Vigil filed her claim, the General Assembly changed the title to the "Workers' Compensation Act of Colorado." § 8–40–101, 3B C.R.S. (1992 Supp.).

contract of hire, said weekly remuneration at the time of the injury shall be deemed to be the weekly wage for the purposes ... of this title.

Thus in those instances where an employee who is paid on a weekly basis has incurred a single disabling work-related injury, the claimant's disability benefits are derived from his or her average weekly wage in effect at the time of the subject injury. *See Bellendir v. Kezer,* 648 P.2d 645 (Colo. 1982); *United Util. & Specialties Corp. v. Industrial Comm'n,* 160 Colo. 518, 418 P.2d 896 (1966); *Danielson v. Industrial Comm'n,* 96 Colo. 522, 44 P.2d 1011 (1935); *Dugan v. Industrial Comm'n,* 690 P.2d 267 (Colo.App.1984).

In cases where an employee has suffered a previous work-related disability, section 8–47–102(1) (now codified with changes at 8–42–104(1)), provides that

> [t]he fact that an employee has suffered a previous disability or received compensation therefor shall not preclude compensation for a later injury or for death, but, in determining compensation for the later injury or death, his *average weekly earning shall be such sum as will reasonably represent his average weekly earning capacity at the time of the later injury and shall be arrived at according to and subject to the limitations in section 8–47–101.*

(Emphasis added.) We have observed that the language of this section recognizes that even though an employee has suffered a previous disability and has received compensation based on the prior injury, the employee nonetheless is also entitled to receive compensation for a later occurring injury.[5] *Empire Oldsmobile, Inc. v. McLain,* 151 Colo. 510, 379 P.2d 402 (1963); *see also Colorado Fuel & Iron Corp. v. Industrial Comm'n,* 151 Colo. 18, 379 P.2d 153 (1962) (where a claimant has suffered a previous disability, a court in determining

average earnings as a basis for compensation for his later injury, has the right and duty to fix such amount as would reasonably represent his earning capacity at the time of the later injury in the employment in which he was then working); *accord Colorado Fuel & Iron Corp. v. Rhodes,* 166 Colo. 82, 441 P.2d 652 (1968).

■ Although section 8–47–102(1) establishes that the basis for compensation of a later injury is the worker's earning capacity at the time of the later injury, this general proposition is, by the express terms of that section, "subject to the limitations in section 8–47–101." One of the "limitations" set out in section 8–47–101, applicable here, is subsection (4) of that provision, which states that

> [w]here the foregoing methods of computing the average weekly wage of the employee, by reason of the nature of the employment or the fact that the injured employee has not worked a sufficient length of time to enable his earning to be fairly computed thereunder or has been ill or in business for himself *or for any other reason,* will not fairly compute the average weekly wage, the division, in each particular case, may compute the average weekly wage of said employee in such other manner and by such other method as will, in the opinion of the director based upon the facts presented, fairly determine such employee's average weekly wage.

(Emphasis added.) This language provides the director of the division of labor[6] with broad discretion to determine whether the circumstances of a particular case require the director to employ an alternative method of computing compensation benefits based upon the employee's average weekly wage. *See Drywall Products v. Constuble,* 832 P.2d 957 (Colo.App.1991) *cert. denied,* (No. 91SC708) (April 13, 1992); *R.J.S. Painting v. Industrial Comm'n,* 732 P.2d

---

5. None of the enumerated methods set out in §§ 8–47–101 through –102 address the computational method that should be employed when a claimant is permanently and totally disabled due to a combination of two separate injuries.

6. The discretion accorded the director of the division of labor under § 8–47–101(4) has been extended to administrative law judges. *See e.g., R.J.S. Painting v. Industrial Comm'n,* 732 P.2d 239, 241 (Colo.App.1986); *Western Sizzlin Steak House v. Axton,* 701 P.2d 96, 98 (Colo.App.1984).

239 (Colo.App.1986); *Western Sizzlin Steak House v. Axton,* 701 P.2d 96 (Colo. App.1984).

We have previously held that a reviewing court can order an ALJ to exercise the discretion accorded him or her pursuant to section 8–47–101(4) whenever the application of one of the enumerated methods for computation of compensation benefits set out in sections 8–47–101 through –102 results in an injustice. In *Williams Bros. v. Grimm,* 88 Colo. 416, 297 P. 1003 (1931), we reviewed the language in C.L. section 4421(c), the predecessor to section 8–47–101(4),[7] and in doing so observed that a "liberal construction of th[is] section[ ], as required by the act itself, demands that where the adoption of one method clearly works an injustice, [an]other should be used." *Williams Bros.,* 88 Colo. at 416, 297 P. at 1003. Accordingly, because in that case the Industrial Commission (the ALJ equivalent at that time) calculated the employee's average weekly wage based on his earnings for the six-month period antedating his injury, notwithstanding that the employee was on a forced vacation without pay for nearly half of that time, we held that "under the circumstances, the fair and just average weekly wage could and should have been determined by the method provided for in [section 4421](c). The district court was right in ordering the Industrial Commission to proceed under section 4421(c), but wrong in directing a specific award thereunder." *Williams Bros.,* 88 Colo. at 417, 297 P. at 1004.

■ Although in *Williams Bros.* we did not articulate the precise standard to be applied in reviewing an order by an ALJ, the court of appeals has on previous occasions applied an "abuse of discretion" standard of review in such instances. *See, e.g., St. Mary's Church v. Industrial Comm'n of Colo.,* 735 P.2d 902 (Colo.App.1986), *cert. denied,* 753 P.2d 769 (Colo.1988); *R.J.S. Painting,* 732 P.2d at 241; *Western Sizz-*

lin, 701 P.2d at 98; *Dugan v. Industrial Comm'n,* 690 P.2d 267, 269. That standard of review requires a showing that the alleged abuse "exceeds the bounds of reason," *Rosenberg v. Bd. of Educ. of Sch. Dist. # 1,* 710 P.2d 1095, 1098–99 (Colo. 1985), and in resolving whether an ALJ has in fact "exceeded the bounds of reason," courts may specifically consider whether an award is supported by the applicable law. *Rosenberg,* 710 P.2d at 1099.

Furthermore, the General Assembly, in enacting section 8–53–120, 3B C.R.S. (1986) (now codified at section 8–43–308, 3B C.R.S. (1992 Supp.)), has in an enumerated fashion set forth the precise grounds upon which the court of appeals may set aside an order by the ALJ:

> Upon hearing the action, the court of appeals may affirm or set aside such order, but only upon the following grounds: That the findings of fact are not sufficient to permit appellate review; that conflicts in the evidence are not resolved in the record; that the findings of fact are not supported by the evidence; that the findings of fact do not support the order; *or that the award or denial of benefits is not supported by applicable law.*

(Emphasis added.) Thus it is settled that the correctness of a legal conclusion drawn by the Panel from undisputed facts is a matter for the appellate court, and where the decision of the Panel is based upon an improper application of the law, a reviewing court may set aside the award. *Dorsch v. Industrial Comm'n,* 185 Colo. 219, 523 P.2d 458 (1974); *Western Cas. & Sur. Co. v. Swort,* 134 Colo. 421, 306 P.2d 661 (1957); *Gruntmeir v. Tempel & Esgar, Inc.,* 730 P.2d 893 (Colo.App.1986).

■ Here, the method employed by the ALJ in computing Vigil's disability benefits was not supported by applicable law,[8]

---

7. The language of these two statutory provisions is essentially the same.

8. Petitioners argue that the ALJ's computation was in fact based on existing law, and cite *Dugan v. Industrial Comm'n,* 690 P.2d 267 (Colo. App.1984) as authority for their argument. In

*Dugan,* the ALJ ruled that the claimant's lower-paying, temporary job would not fairly compute his average weekly wage, and consequently awarded benefits based on the claimant's earlier wages. The Industrial Commission Panel and the court of appeals both reversed the ALJ's

and resulted in an unjust compensation award to Vigil. First, it is unclear from the record which statutory provision(s) the ALJ actually employed in computing Vigil's average weekly wage, and in any event, none of the enumerated methods set out in the applicable statutory scheme, i.e., sections 8–47–101 through –102, provides an appropriate basis for computing a claimant's average weekly wage when the claimant is permanently and totally disabled due to a combination of two separate injuries. Next, and quite apart from the unusual fact of Vigil's coexisting injuries, other factors cast a unique character to this case. These include the fact that the ALJ specifically found that the greater degree of injury was attributable to Vigil's original injury; Vigil's earnings were significantly higher at the time of the original injury; Vigil was employed for roughly seven years at her first position as a maid/housekeeper, yet only a few months at the second light-duty employ; the applicable case law appears to preclude recovery of permanent partial disability benefits under the circumstances of Vigil's original injury; and finally, both of Vigil's injuries were sustained while working for the same employer. Where there are such unique circumstances as those presented herein, and where the standard statutory methods of computing a claimant's average weekly wage work a gross inequity to the claimant, we hold that section 8–47–101(4) provides an appropriate and fair solution, and is to be taken into consideration by the ALJ in such instances.

Thus because the ALJ failed to exercise the discretion accorded him under that provision, and as far as is ascertainable, relied instead upon an inapposite method in computing Vigil's average weekly wage, the ALJ improperly applied the extant law in this case, and his order must be set aside. *See Williams Bros. v. Grimm*, 88 Colo. at 416–17, 297 P. at 1003–04 (where the adoption of the method of computation of aver-

age weekly wage works an injustice, the Industrial Commission's order must be set aside and that Commission must comply with the statutory provision which accords discretion to the Commission to rectify the injustice). Accordingly, that part of the court of appeals decision setting aside the final order of the Panel and remanding the cause to permit the ALJ to re-compute Vigil's permanent total disability benefits in a manner that will effect an equitable result is affirmed.

### B.

■ Although the court of appeals properly concluded that the ALJ's failure to exercise the discretion accorded him pursuant to section 8–47–101(4) was inconsistent with the existing law, and thus correctly set aside the Panel's affirmance of the ALJ's order, the court of appeals erred in substituting its own judgment for that of the ALJ when it directed the ALJ to specifically award disability benefits based on Vigil's average weekly wage in effect at the time of her first injury, while employed as a maid/housekeeper.

■ Section 8–47–101(4) allows that the director of the division of labor "may compute the average weekly wage of said employee in such other manner and by such other method as will, in the opinion of the director based upon the facts presented, fairly determine such employee's average weekly wage." In ordering the Panel to remand the cause to the ALJ *to exercise the discretion accorded him or her pursuant to section 8–47–101(4)*, a reviewing court should not at the same time select the method of computing a claimant's average weekly wage and thereby arrogate the discretion accorded by the General Assembly to the ALJ. When section 8–47–101(4) is employed, as we are requiring the ALJ to do here, the claimant's average weekly wage is to be calculated "in such other manner and by such other method as will,

---

order. *Dugan* is readily distinguishable from the instant case, inasmuch as the claimant therein had not suffered any injury while employed in his higher-paid position, and only became injured after he had commenced work-

ing in the latter employment position; thus there was no evidence that, absent the single injury, he would have earned more than the amount of his wages at the later, lower-paying position.

*in the opinion of the [ALJ]"* fairly compensate a claimant. The method of calculation to be used in the ultimate determination of the claimant's award then, by the express terms of section 8–47–101(4), is to be left in the first instance to the ALJ. Put simply, the ALJ should be allowed to employ the discretion accorded him or her under section 8–47–101(4) before a court expropriates that discretion by ordering a specific compensation award to the claimant.

■ Furthermore, we have addressed this very issue on a previous occasion; in *Williams Bros.,* 88 Colo. at 418, 297 P. at 1004, we held that while a reviewing court could order the Industrial Commission to proceed under section 4421(c), the precursor to section 8–47–101(4), by the explicit language of that section, the court could not take the next step and order a specific compensation award to the claimant. Consistent with *Williams Bros.,* we hold that, except where a matter involves a "pure question of law," an appellate court should not substitute its own judgment for that reposed by statute in an administrative officer or agency having special competence. *See Saint Luke's Hosp. v. Colorado Civil Rights Comm'n,* 702 P.2d 758, 761 (Colo. App.1985); *Petersen v. Colorado Racing Comm'n,* 677 P.2d 412, 414 (Colo.App. 1983); *Anaya v. Sullivan,* 779 F.Supp. 509 (D.Colo.1991); *see also* Bernard Schwartz, *Administrative Law,* § 8.25, at 490 (2d ed. 1984); Kenneth Culp Davis, *Administrative Law Treatise,* § 22:1, at 81–82 (2d ed. 1983). Thus the court of appeals erred in this instance when it substituted its own method of computing Vigil's average weekly wage for that of the ALJ, who has the technical expertise to determine the appropriate computational method to be used and where, as here, the relevant statute confers such discretion upon the ALJ.[9]

### III.

Because the ALJ calculated Vigil's average weekly wage in a manner inconsistent with section 8–47–101(4), 3B C.R.S. (1986) (now codified at section 8–42–102(3), 3B C.R.S. (1992 Supp.)), the statutory provision that accords an ALJ broad discretion to avoid inequitable results, we find that the ALJ computed Vigil's average weekly wage in a manner that was unsupported by the applicable law. We further find, however, that the court of appeals erred when it substituted its judgment for that of the ALJ in specifically directing the ALJ to calculate Vigil's compensation award based upon her average weekly wage earned during her earlier employment as a maid/housekeeper and at the time of her original industrial injury. As such, we affirm that part of the court of appeals decision setting aside the final order of the Panel of the Colorado Industrial Claim Appeals Office that affirmed the ALJ's order, and reverse that part of the court of appeals decision directing the Panel to remand the cause to the ALJ for a re-calculation of Vigil's benefits based upon the average weekly wage during her first employment assignment. We therefore direct the court of appeals to remand the matter to the Panel with instructions to remand the cause to the ALJ so that the ALJ may re-compute Vigil's compensation benefits in accordance with section 8–47–101(4), 3B C.R.S. (1986).

VOLLACK, J., concurs in part and dissents in part, and MULLARKEY, J., joins in the concurrence and dissent.

9. Our position is reinforced by the language of §§ 8–53–120 and 8–53–124, 3B C.R.S. (1986) (now codified at §§ 8–43–308 and 8–43–312, 3B C.R.S. (1992 Supp.)), which must be read in conjunction with § 8–47–101(4), the controlling statutory provision. Section 8–53–124 limits the ability of the court of appeals to order entry of "a proper award upon the findings as the nature of the case shall demand." While there is no dispute as to those findings made by the ALJ, he has not had the opportunity to include findings in accordance with § 8–47–101(4). Thus, for practical reasons, we give the ALJ the opportunity, where he has neglected to render adequate findings pursuant to § 8–47–101(4), to act on remand, rather than permit the court of appeals to do so. *See Womack v. Industrial Comm'n,* 168 Colo. 364, 451 P.2d 761 (1969); *Industrial Comm'n v. Riley,* 165 Colo. 586, 441 P.2d 3 (1968).

Justice VOLLACK concurring in part and dissenting in part:

The majority concludes that "the ALJ calculated Vigil's average weekly wage in a manner inconsistent with section 8–47–101(4), 3B C.R.S. (1986) (now codified at section 8–42–102(3), 3B C.R.S. (1992 Supp.)), the statutory provision that accords an ALJ broad discretion to avoid inequitable results." Op. at 858. I agree. The majority further finds, however, "that the court of appeals erred when it substituted its judgment for that of the ALJ in specifically directing the ALJ to calculate Vigil's compensation award based upon her average weekly wage earned during her earlier employment as a maid/housekeeper and at the time of her original industrial injury." *Id.* at 858. I disagree. I find that section 8–53–124, 3B C.R.S. (1986), gives the court of appeals authority to order entry of judgment, and that the court of appeals appropriately ordered entry of judgment in the present case, premised on Vigil's wages earned while a maid/housekeeper. I dissent as to part II.B. of the majority opinion.

We granted certiorari to consider

[w]hether the court of appeals erred in directing an administrative law judge to recompute the respondent's permanent total disability benefits based on her average weekly wage at the time of her first injury when the respondent suffered loss of her wage-earning capacity as a result of two disabling injuries.

As the majority notes, sections 8–47–101 and 8–47–102 governed the calculation of compensation for workers sustaining work-related injuries. Op. at 854. Those sections have been revised and reenacted, and are currently found in sections 8–42–102 through 8–42–104, 3B C.R.S. (1992 Supp.), of the Colorado Workers' Compensation Act.

Disputes arising under the Workers' Compensation Act are governed by the hearing and review procedures set forth in Article 53 of Title 8. Section 8–53–119, 3B C.R.S. (1986) (now codified at 8–43–307, 3B C.R.S. (1992 Supp.)), provides that any person "dissatisfied with any final order of the panel, may commence an action in the court of appeals against the industrial claims office as defendant to modify or vacate any such order on the grounds set forth in section 8–53–120." § 8–53–119, 3B C.R.S. (1986). Section 8–53–120 in turn provides, as the majority notes, op. at 856, several causes upon which the court of appeals may set aside the order, including the grounds that "the findings of fact do not support the order[,] or that the award or denial of benefits is not supported by applicable law." § 8–53–120, 3B C.R.S. (1986).

As part of the hearing and review procedures, section 8–53–124 gives the court of appeals plenary authority to order entry of a proper judgment. Prior to the revision and reenactment of the Workers' Compensation Act, it provided:

Upon setting aside of any order, the court may recommit the controversy and remand the record in the case for further hearing or proceedings by the director, hearing officer, or panel, *or it may order entry of a proper award upon the findings as the nature of the case shall demand.* In no event shall such order for award be for a greater amount of compensation than allowed by articles 40 to 54 of this title, or in any manner conflict with the provisions thereof.

§ 8–53–124, 3B C.R.S. (1986) (now codified at section 8–43–312, 3B C.R.S. (1992 Supp.)) (emphasis added).[1] The plain language of the statute dictates that the court of appeals has authority to order entry of a proper award if the nature of a particular case so demands.

I find that, based on the "unique character" of this case and on the fact that the findings of the ALJ are not in dispute, it was appropriate for the court of appeals to order entry of judgment. Op. at 857; *id.* at 858 n. 9. As the majority notes, Vigil

---

1. The language of section 8–43–312, 3B C.R.S. (1992 Supp.), is substantially similar to the language of section 8–53–124, 3B C.R.S. (1986).

sustained a work-related injury in September 1987, at which time her weekly wages were approximately $418. In January 1988, Vigil returned to work for the same employer, but had a reduced earning capacity of approximately thirty-one percent; Vigil earned approximately $290 per week after her first injury. Three months later, Vigil sustained a second work-related injury, and was subsequently unable to work in any capacity.

The majority notes that:

the ALJ specifically found that the greater degree of injury was attributable to Vigil's original injury; Vigil's earnings were significantly higher at the time of the original injury; Vigil was employed for roughly seven years at her first position as a maid/housekeeper, yet only a few months at the second light-duty employ.

Op. at 857. The majority found that "the standard statutory methods of computing a claimant's average weekly wage work a gross inequity to [Vigil]." *Id.* at 857. The majority thus correctly affirmed the court of appeals' setting aside of the panel's order. Under the plain language of section 8–53–124, however, the court of appeals appropriately ordered entry of judgment in favor of Vigil, based on the unique facts of her case—which, as the majority notes, are not in dispute—in order to comply with the requirement that an average weekly wage must be calculated fairly. § 8–47–101(4), 3B C.R.S. (1986); Op. at 858 n. 9. Because the Colorado Workers' Compensation Act confers such authority on the court of appeals, I dissent to part II.B. of the majority opinion.

I am authorized to say that Justice MULLARKEY, joins in this concurrence and dissent.